JEANNETTA RUSSELL v. FREDERICK ROACH
AND ANOTHER.
JEANNETTA RUSSELL v. ARTHUR M. ROACH AND OTHERS.[1]

January 6, 1928.

Nos. 26,319, 26,320.

**Findings sustained that no trust resulted from conveyances.**

1. The findings, to the effect that the conveyances of the properties in question were not procured by fraud or undue influence and that no trust in favor of plaintiff resulted from the transactions, are justified by the evidence.

**Grantor's subsequent statements to third person inadmissible for several reasons.**

2. Statements made by the grantor to third parties some years after the conveyance were not admissible in evidence to impeach the title so conveyed.

**Grantor's will admissible in evidence.**

3. A will executed by the grantor while owner of the property giving it to the same children to whom she afterwards conveyed it was admissible as showing her state of mind and throwing light upon her intention in making the conveyance.

[1] Reported in 217 N. W. 115.

Evidence, 22 C. J. p. 357 n. 98.

Trusts, 39 Cyc. p. 192 n. 4; p. 193 n. 8.

Two actions in the district court for Hennepin county, tried together, in which judgment was directed in each case for the defendants. From orders, Waite, J. denying her motions for a new trial, plaintiff appealed. Affirmed.

*Thompson, Hessian & Fletcher* and *John Ott,* for appellant.

*Oscar J. Berg* and *C. E. Purdy,* for respondents Frederick and Ida Roach.

*Keyes, Pardee & Solether,* for respondents Arthur M. and Nellie Roach.

TAYLOR, C.

Plaintiffs brought an action against Frederick Roach and Ida Roach, his wife, to impress a constructive trust upon a parcel of real estate in the city of Minneapolis designated as No. 116 Hennepin avenue. Plaintiffs brought another action against Frederick Roach and Ida Roach, his wife, and Arthur M. Roach and Nellie Roach, his wife, to impress a constructive trust upon the funds received by defendants Frederick and Arthur for the sale of another parcel of real estate in the city of Minneapolis designated as No. 515 Hennepin avenue. The two actions were tried together. Near the end of the trial Fred Russell withdrew as plaintiff and had his name stricken from the pleadings, and Jeannetta Russell continued the action as sole plaintiff. The court made findings and directed judgment for defendants in both, and plaintiff appealed from orders denying new trials therein. Both actions are submitted to this court on the same record and briefs.

The property known as No. 116 was owned by Chester Roach in his lifetime; that known as No. 515 was owned by his wife and was the family home during their married life. She will be referred to as Mrs. Roach to distinguish her from a daughter of the same Christian name. Chester Roach died intestate February 3, 1892. At the time of his death No. 116 was subject to a mortgage of $8,000 and No. 515 to a mortgage of $20,000. He left surviving

his wife and five children, Adelaide, Jeannetta, Frederick, Angeline and Arthur. The two eldest were married, Adelaide to A. E. Mc-Cracken, Jeannetta to Fred Russell. Upon the petition of Mrs. Roach, Frederick, then 24 years of age, was appointed administrator of his father's estate. A claim of Mrs. Roach against the estate for something over $15,000 was allowed by the probate court. Under license of the probate court No. 116 was sold to Mrs. Roach for the sum of $18,000, its appraised value, and she became the owner of that property thereby. The final decree made May 9, 1893, found the residue of the estate remaining for distribution amounted to the sum of $6,299.79, and awarded the sum of $2,099.94, being one-third thereof, to Mrs. Roach, and $839.97, being one-fifth of the remainder, to each of the five children. The children were not paid their shares in cash, but accepted the promissory notes of Mrs. Roach therefor.

Mrs. Roach was not familiar with business and committed the management of her business affairs to Frederick, who managed and conducted them as he saw fit but with her full knowledge and acquiescence. He became practically the head of the family, and provided for his mother and his younger sister and brother, who were in school at the time of their father's death, Arthur being then only 12 years of age. In 1898 the older girls demanded payment of the notes given them by their mother for their shares in their father's estate. Mrs. Roach conveyed No. 116 to Frederick, and Frederick paid the notes held by the three girls then aggregating the sum of $3,497.74; and these notes together with the notes held by Frederick and Arthur were canceled and surrendered.

Frederick had started in the bicycle business in 1890 in the rear of the home at No. 515. He found the bicycle business profitable and continued in it for 26 years. The house at No. 515 was an old frame structure. Not long after his father's death he rented an apartment elsewhere for his mother and the two younger children, and occupied one side of the house at No. 515 for his bicycle business and rented the remainder. In 1898 he removed the old building and erected in its place a two-story brick building which was completed the following year at a cost of $25,000. The mortgage of

$20,000 was taken up and a new mortgage of $27,000 placed on the property. In 1903 Mrs. Roach conveyed this property to Frederick and Arthur, subject to the mortgage. In 1908 it was sold for $90,000. The payment of the mortgage, commissions and other expenses reduced the amount actually realized to about $55,000. In connection with this sale Mrs. Roach executed a quitclaim deed to the purchaser at his instance, and for the purpose of perfecting the title procured the entry of a final decree in the estate of her mother through whom her title had come.

Arthur, while still in his teens, began working for Frederick in the bicycle business and continued working for him for several years after becoming of age. Arthur married in 1901. Angeline had married previously. Frederick built a house for Arthur, apparently in 1903. Mrs. Roach lived with Arthur and his wife for about 18 years. In 1919 she was suffering from senile dementia to such an extent that she was taken to a private sanatorium or hospital where she remained until her death in February, 1925, at the age of 87 years. The expense for her care and nursing at the sanatorium was borne by Frederick and Arthur, Frederick paying the greater part of it.

[1] The complaints charged that Frederick took advantage of the confidence placed in him by his mother and induced her to convey these properties by fraudulently promising that he would hold them in trust for all her children and that each would receive a pro rata share at her death; and that she made the conveyances in reliance upon such promises and in the belief that they were made in trust and not absolutely in fee. The trial court, after a careful and painstaking consideration of all the facts and circumstances and all the evidence bearing thereon, found that there had been no fraud or undue influence on the part of Frederick and that no such promises had been made. The evidence fully justified these findings, and it is doubtful if contrary findings could be permitted to stand.

Plaintiff does not claim to have shown that Frederick exercised any undue influence over his mother or ever promised or represented

that the other children should share in the property; but rests her present contention upon the claim that Frederick stood in a confidential and fiduciary relation to his mother, that these properties were conveyed to him without consideration or for an inadequate consideration, that his mother's mind became affected, and that the burden was on him to establish the validity of the transfers by showing that he had acted fairly and in good faith. We shall merely refer to some of the outstanding facts. Mrs. Roach conveyed one of these properties 27 years before her death and the other 22 years before her death—long before she became afflicted with the mental malady from which she suffered in her later years. When No. 515 was sold she perfected the title by employing an attorney and having the probate of her mother's estate completed, and ratified the sale by executing a quitclaim deed to the purchaser. This was 17 years before her death, when she was in full possession of all her faculties; and there is nothing to indicate that she recognized or considered that anyone other than Frederick and Arthur had any interest in the property or its proceeds.

Mrs. Roach being dead, whatever agreement may have been made between her and Frederick is not shown. But the fact appears that she turned the management of the property over to Frederick and permitted him to use and deal with it as if it were his own, and thereafter conveyed the title as hereinbefore stated; and that Frederick supported and provided for her throughout the remainder of her life. He provided a home for her and the two younger children until they were married. After the marriage of Arthur he built Arthur a house. Mrs. Roach lived with Arthur, not with Frederick, and her board and lodging were apparently furnished by Arthur, but Frederick supplied her with money regularly during all this period. So far as appears, her daughters took no part at any time in caring for her or providing for her.

The revenue from the properties during the 16 years that elapsed between the death of the father and the sale of No. 515 were small and amounted to little more than enough to pay the interest on the encumbrances, the taxes and other expenses necessary to maintain the properties in condition for use; and prior to the erection of

the brick building were apparently not sufficient for those purposes. Frederick paid the mortgage upon No. 116 before that property was conveyed to him. In what manner he procured the funds to make that payment does not appear. In 1898 he erected the brick building upon No. 515 at an expense of $25,000. He obtained $7,000 of this money from the proceeds of the new mortgage and furnished the remainder himself. It was while he was incurring this expense that demand was made for payment of the notes given by his mother, and he borrowed the money and paid them.

A feeling of estrangement seems to have arisen between the daughters on one side and Frederick and Arthur on the other, and there was little or no association or communication between them. This situation must have been fully known to Mrs. Roach, and if she expected or intended that her daughters should share in the property she would naturally have taken some action to show that such was the understanding. Instead of doing anything of that nature, she went alone to an attorney in 1899, while she was still owner of No. 515, and had a will drawn which she left with the attorney and in which she gave $100 to each of the three daughters and all the rest and residue of her property to Frederick and Arthur in equal shares.

In November, 1908, plaintiff, who was then in Denver, Colorado, wrote her mother saying she had been informed that Frederick had sold No. 515 for $90,000 and asking if her mother had arranged matters so that she, plaintiff, would get her share of it after her mother was through with it. She says that she received no answer to that inquiry although she and her mother corresponded thereafter. However, Mrs. Roach took plaintiff's letter and a copy of what appears to be an answer to it, made in her own handwriting, to the attorney who had drawn her will, showed him plaintiff's letter and gave him this copy with the request that he keep it, which he did. In it she refers to plaintiff's letter and says:

"I thought you knew everything was all settled up years ago."

She further says:

"I have nothing now to give as I had to dispose of the property when I raised the money to settle all your claims nine years ago. So now if they realized anything for their years of worry I am only too glad to let them have it. The property had a mortgage of 20,000 when Pa died, and now the new building cost over 25,000, and as you ought to know Fred paid the taxes before the new building was built for over eight years, so in order to raise the money to pay the claims there was nothing for me to do but dispose of what interest I had left." She adds that she had a little bank account of her own which she thought sufficient for her own needs and, "I am happy and free from worry for the first time in all the years since Pa died."

There is no evidence that any such letter was mailed to or received by plaintiff. But this copy in Mrs. Roach's own handwriting, delivered by her in 1908 to the attorney who produced it at the trial, shows that she disclaimed any interest in the property and considered that plaintiff had no interest therein.

[2]  Plaintiff urges as error the rejection of an offer to prove that in a certain conversation Mrs. Roach had stated, in substance, that she had turned the property over to Fred in trust for her, but had not deeded it to him, and that the girls would get theirs later; and in another conversation had stated, in substance, that Fred was to take care of the property and that the girls would have their share after her death. These conversations were several years after she had parted with all title to the properties, and the statements made were clearly inadmissible on several grounds. They were within the hearsay rule. So far as they implied that the property was held in trust for her or her appointees, they were self-serving. Furthermore, it is thoroughly settled that statements impugning the title of the present owner made by a former owner after he has parted with his title are not admissible in evidence against the present owner. Sons v. Sons, 145 Minn. 367, 177 N. W. 498; Crispo v. Conboy, 153 Minn. 343, 190 N. W. 541, and cases cited in those cases.

Plaintiff cites authorities to the effect that in the contest of a will declarations made by the testator subsequent to the execution of the will may be admitted as bearing on the question of mental capacity or undue influence or as showing his relations with and feelings toward the donees and others who would seem to have been entitled to his consideration. Those authorities undoubtedly state a recognized principle of law but are not in point here. She also cites Howell v. Howell, 47 Ga. 492, to the effect that declarations of a parent in respect to a gift to his son made after the execution of the deed of conveyance were admissible as bearing upon the mental capacity of the parent to make the deed. But that case is also not in point, for the deeds in question are not attacked on the ground that Mrs. Roach lacked mental capacity to make them at the time they were made.

[3] Plaintiff urges that the court erred in admitting in evidence the will executed by Mrs. Roach. Plaintiff predicates her contention on the claim that although Mrs. Roach executed deeds absolute in form she intended that plaintiff and her sisters should share in the property so conveyed. The death of Mrs. Roach barred the testimony of Frederick and Arthur as to conversations with her or oral statements made by her. This will was executed after she had conveyed No. 116 but while she still remained the owner of No. 515, the more valuable property; and we think it was admissible as tending to show her state of mind and as throwing light upon her intention in respect to the property.

There was no ground for claiming that a constructive trust had been created, and the defendants stood in no fiduciary relation to plaintiff. Harney v. Harney, 170 Minn. 479, 213 N. W. 38.

We are satisfied that the conclusion reached by the learned trial court is correct, and the order denying a new trial is affirmed in each case.