## ALBERT REEK AND OTHERS v. EDWARD REEK AND OTHERS.[1]

December 4, 1931.

No. 28,554.

[1]Reported in 239 N. W. 599.

*Freeman & Smith,* for appellants.
*Daly & Barnard,* for respondents.

HOLT, J.

Plaintiffs appeal from the order denying a new trial, after a verdict finding that there had been no undue influence or duress exercised by defendants Edward Reek and his wife in obtaining the deed sought to be annulled in this action.

Wilhelm Reek and his wife, defendant Louisa Reek, were pioneer settlers in Renville county. They were thrifty and acquired lands. Three sons and two daughters grew to maturity in the home. One daughter is now dead, but her two daughters join in this action as plaintiffs with the two oldest sons, Albert and William, and the other daughter, Mrs. Fredrickson, against the youngest son, Edward, his wife, Lena, and Louisa Reek to cancel and set aside the conveyance to Edward and his wife of the home farm of 160 acres, always occupied as a home by the old people. The claim is that the conveyance was obtained by undue influence and duress on the part

of Edward Reek a few months before his father's death at the age of 88 years.

When the daughters married they were given some cash and personal property. When Albert, now past 60 years, married at the age of 24, he received a farm of 160 acres from his father. It was not all paid for, but he was given other assistance. A few years later William married and was placed in possession of a 160-acre farm and also given a start. About two years later, or 26 years ago, when Edward married, 160 acres adjoining the homestead of the old people were set aside for him, but the deeds to these farms were not given William and Edward until about 1913, or about the time the old folks made their wills that year. When Edward married he did not move onto his own farm, but remained with his parents. He testified that after two years he rented the home farm, paying three dollars an acre rent. For over 25 years he so remained, or until the deed in question was given and a contract back to the parents to furnish them a home and proper care and attention so long as they should live; also certain annual cash payments, burials, and monument.

It seems that in 1898, before either William or Edward was married, their father made a will in which the two were to share equally. But, as stated, in 1913, each of the parents made a will under which Edward took the 160 acres in question subject to a life estate of his mother. In 1925, while Wilhelm Reek was on a visit with Albert, he was taken to Redwood Falls, and there Mr. Dolliff drew another will in which the farm and other property were equally divided. Edward did not know of this will until in November, 1927. He admits he grew angry, because he thought he had made improvements on the home place on the strength of the 1913 will. The upshot was that Edward's son took his grandfather to the probate court, where the Dolliff will was deposited, took it out, and again deposited the 1913 will. But on September 1, 1928, when Wilhelm was on another week's visit to Albert, the former again possessed himself of the 1913 will and destroyed it. Edward did not learn of this until a day or two before the deed in question here was drawn and delivered. The verdict was that defendants

Edward Reek and his wife did not procure the deed from Wilhelm Reek and his wife by undue influence or duress.

Many assignments of error relate to rulings excluding testimony of declarations made by Wilhelm Reek, soon after the deed was given, that Edward had coerced his parents by threats of personal violence to execute the deed; declarations prior thereto of troubles with Edward and a desire that Edward and family should move away; and declarations of fear of injury from Edward made many years prior to the giving of the deed. It was conceded that the grantors were mentally competent to convey at the time the deed was made. Declarations or statements of a deceased person are not admissible unless it appears that they are against his interests. Hosford v. Rowe, 41 Minn. 245, 42 N. W. 1018, discusses what may be against interest, intimating that declarations of a testator that he had or had not made a will is not against interest since it was his privilege to make or revoke a will at any time. After referring to the fact that declarations of a deceased person are hearsay and not admissible unless made against interest, the court, in Russell v. Roach, 173 Minn. 314, 320, 217 N. W. 115, continues:

"Furthermore, it is thoroughly settled that statements impugning the title of the present owner made by a former owner after he has parted with his title are not admissible in evidence against the present owner. Sons v. Sons, 145 Minn. 367, 177 N. W. 498; Crispo v. Conboy, 153 Minn. 343, 190 N. W. 541, and cases cited in those cases."

It is true that declarations of a testator indicating his condition or state of mind are admissible in a will contest where competency or undue influence are the issues, but they are not admissible as proof of the facts declared or stated in the declaration. Zibble v. Zibble, 131 Mich. 655, 92 N. W. 348. But, as stated in Hosford v. Rowe, 41 Minn. 245, 42 N. W. 1018, the rule applicable to declarations of a testator is not so appropriate to declarations of a grantor impugning the title conveyed to the grantee. Moreover, the plaintiffs proposed to prove by the witness W. H. Schaffer declarations of duress, who, after the grantor wife had testified denying duress

and declarations of threats and undue influence, was permitted to give the statements made by her in presence of her husband, did not come forth with anything showing duress or threats of force.

There is no merit to the claim that plaintiffs should have been allowed to prove a shooting incident, some eight years previous to the conveyance involved in this suit, to show the state of fear in which the old people were kept by Edward. If such an incident ever took place it was quite clear that it was too remote to the transaction here in question, and the ruling excluding the offer was proper. In the same class and as immaterial and hearsay must be regarded the offer to prove that the deceased grantor stated when he made the Dolliff will that he intended the children to share equally, that Edward was not worthy to have the farm and Wilhelm was not treated right, and the offer that in the summer of the year the deed was made Wilhelm made substantially the same statements to certain witnesses engaged in haying.

There is a claim that the witness Schaffer should have been allowed to testify to declarations of Louisa. We think so far as impeachment of her testimony or refutation thereof was concerned the court gave counsel and the witness ample scope. Louisa was one of the grantors in the deed attacked, and her declarations were not competent to attack the title of the defendants, grantees.

Other assignments of error, going to the exclusion and admission of answers to certain questions put to defendant Edward Reek and certain other witnesses, have been examined but seem devoid of substance. As to some it was clearly discretionary with the court; others were immaterial and irrelevant to the issue tried. The reception of the 1898 will could not have helped or harmed either side.

Much of the charge to the jury is assailed as prejudicial to plaintiffs. We think an unbiased lawyer after an attentive reading would pronounce it fair and appropriate. The only part liable to any sort of criticism was when speaking of the gift of 160 acres to each son as he married the court said:

"That is, as I have stated a moment ago, that he invested about the same amount of money in each farm or quarter section, so that

he dealt with each of the three boys equally, and there is no complaint on the part of any one that, in so far as the deeding of these farms, that the old gentleman, the father, gave to any one of the boys any preference over the other."

The statement was in accord with the evidence. Each got 160 acres, and there was no evidence or claim by any one of the sons that one farm was more valuable when received than either of the other two.

This instruction is objected to:

"And I have no hesitancy in saying to you that if, upon a consideration of all the evidence in the case, that is, both that offered by plaintiffs as well as defendants, you should conclude that the testimony given here by Louisa Reek, the old lady, is true, is correct, then, I charge you to find a negative answer to this question."

It is contended that this instruction singles out a witness in violation of decisions such as Harriott v. Holmes, 77 Minn. 245, 79 N. W. 1003; Goodhue Farmers W. H. Co. v. Davis, 81 Minn. 210, 83 N. W. 531; Taubert v. Taubert, 103 Minn. 247, 114 N. W. 763; Kincaid v. Jungkunz, 109 Minn. 400, 123 N. W. 1082; Kerling v. G. W. Van Dusen & Co. 109 Minn. 481, 124 N. W. 235, 372. But in the instant case Louisa Reek was not singled out as to credibility or as to interest. The court simply stated that, if the jury found from all the testimony in the case that her testimony was true, duress or undue influence could not be found. This did not indicate to the jury that her testimony stood upon a different plane from that of any other witness. We see no more objection to the instruction than was noted in Schmitt v. Murray, 87 Minn. 250, 91 N. W. 1116; Smith v. Salem, 150 Minn. 418, 185 N. W. 394; Shephard v. Alden, 161 Minn. 135, 201 N. W. 537, 202 N. W. 71, 39 A. L. R. 1094.

The undue influence attempted to be proved in this case was in the nature of threats and intimidation, and to be considered as included in the term duress. The case was fairly tried, and the verdict is amply sustained. The contract to support and make certain payments yearly was adequate legal consideration for the deed. In the execution of the contract and deed unusual precautions were

538

taken to acquaint the old people with the contents. No error is found in the record which would justify a new trial.

The order is affirmed.