OLGA P. PAUTZ, SPECIAL ADMINISTRATRIX OF
ESTATE OF RAYMOND E. PAUTZ, v. AMERICAN
INSURANCE COMPANY.

128 N. W. (2d) 731.

May 15, 1964—No. 39,186.

242

*Bernard M. Harroun,* for appellant.
*Tyrrell, Jardine, Logan & O'Brien,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Actions by Olga P. Pautz as special administratrix of the estate of Raymond E. Pautz, deceased, against defendant, American Insurance Company, a corporation, on two alleged contracts for settlement

in an action for damages arising out of an automobile accident. The latter action had been instituted by Raymond E. Pautz against William and Ruth Selman, defendant's insureds, and was pending at the time of Raymond's death. In the present action, based upon the jury's finding on a special interrogatory, the court determined that no offer of settlement and no contract for settlement of the damages sought in the prior action had been made by anyone before Raymond's death. This is an appeal from a denial of plaintiff's subsequent motion for amended and additional findings or for a new trial.

On appeal plaintiff contends that the court erred (1) in refusing to strike portions of defendant's answer having reference to its defenses of fraud, mutual or unilateral mistake, and lack of capacity with respect to the alleged contracts for settlement; (2) in sustaining defendant's objections to certain exhibits offered in evidence by plaintiff as hereinafter set forth; (3) in sustaining objections to the testimony of Olga P. Pautz and Edward Pautz, parents of Raymond E. Pautz, with reference to a conversation with Raymond just prior to his death on December 10, 1961, and to his acceptance at that time of an alleged offer of settlement made by defendant on December 7, 1961; (4) in allowing defendant's counsel in his argument to the jury to characterize plaintiff's case and plaintiff's counsel as knowingly and intentionally attempting to perpetrate a fraud on the defendant; and (5) in refusing to grant plaintiff's motion to direct the jury to find that a contract of settlement on behalf of Raymond had been consummated after Raymond's death by his counsel and defendant.

Raymond E. Pautz died on Sunday, December 10, 1961, between 9 and 10 p. m. at Veterans Hospital, Fort Snelling. His death was due to cancer and bore no relationship to the automobile accident out of which the action pending at the time of his death had arisen. It is plaintiff's claim that a few hours prior to his death Raymond accepted an oral offer of $8,000 made by defendant to his counsel, Robert Munson, on December 7, 1961, in settlement of such action; and that his counsel consummated a second settlement agreement with defendant for Raymond's benefit on the day following his death for an additional $1,000.

Defendant denied it had made any offer of settlement of the action for damages either to Raymond E. Pautz personally, or to his attorney, Robert Munson, or to anyone else prior to Raymond's death; and likewise denied that any contract for settlement thereof had been made either during Raymond's lifetime or otherwise. It alleged affirmatively that if any such contract had been made it had been induced by fraud on the part of Raymond or his agents; or had been made by persons lacking capacity or authority therefor; or had been made as a result of mutual or unilateral mistake.

At the trial Mr. Munson testified that on December 7, 1961, while Raymond was in Veterans Hospital, he (Munson) had received by telephone an offer of $8,000 in settlement of the pending action from Douglas J. McClellan, defendant's claims representative; that at that time he had advised Mr. McClellan that he would communicate the offer to his client's parents, who were coming from International Falls to visit Raymond on Sunday, December 10, 1961; that on December 11, 1961, while still unaware of Raymond's death, he had telephoned McClellan and advised him that Raymond had instructed his parents to advise him (Munson) that the offer of $8,000 was acceptable; that on that same date after further negotiations an additional settlement had been arrived at whereby defendant would pay an additional $1,000 to Raymond if Munson would guarantee payment therefrom of a hospital bill in the sum of $271 incurred by Raymond shortly after the accident. It is admitted that these negotiations were held at a time when both McClellan and Munson were unaware that Raymond had died the previous evening. It is undisputed that in conjunction with such negotiations a draft in the sum of $9,000, payable to Raymond E. Pautz, was drawn by defendant and delivered to Munson, together with a release of all claims in the action to be executed by Raymond in consideration of such sum. On the day following delivery of this draft, Munson was instrumental in having Olga P. Pautz, mother of Raymond, appointed special administratrix of his estate. In this capacity she endorsed the draft and executed the release, but defendant refused to honor the draft upon its presentation for payment.

In his testimony McClellan denied that he had made any offer of

settlement to Munson or anybody else at any time prior to Raymond's death, and in particular on December 7, 1961. He testified that in a conversation with Munson on that date the latter had demanded different sums in settlement, none of which were less than $10,000. He testified further that on the morning of December 11, 1961, before learning of Raymond's death the day before, he had offered the sum of $7,500 to Munson in settlement of the action, which offer the latter had then rejected; that after further negotiations and after consultation with his superior, he had raised the offer to $8,000, which had again been rejected; and that he had finally reached an agreement with Munson to settle all claims for $9,000; that thereafter the draft for $9,000 and the release to be signed by Raymond had been prepared and delivered to Munson.

During the trial plaintiff called as witnesses Olga P. Pautz and Edward Pautz, parents of Raymond. They were each asked to relate their conversations with Raymond on the afternoon of December 10, 1961, with respect to his acceptance of the alleged $8,000 offer of settlement. This testimony was objected to and rejected by the court on the ground that it was inadmissible under the provisions of Minn. St. 595.04, commonly referred to as the Dead Man's Statute.

At the close of the testimony, the trial court gave the jury the following instructions:

"* * * Now, this case is being submitted to you on your answering two questions * * *. Insofar as what the legal consequences are from your answering these questions is not before the jury nor should that be considered by the jury. * * * The only situation that you are confronted with and your duty is to answer these questions in the light of the law that I give you and based upon the testimony you have heard * * *.

*   *   *   *   *

"Now, with regard to the situation as to whether or not Mr. Munson revealed to Mr. McClellan the situation with regard to the illness that Mr. Pautz had, that is immaterial so far as your answering of these questions. The only reason that was allowed in the testimony was for the purpose of going to the credibility of the testimony * * *.

*   *   *   *   *

"* * * In this particular case, two questions are to be submitted to you. These are the two questions: 'Question No. 1. Did Mr. McClellan, on December 7th or December 8th, 1961, make an offer to Mr. Munson to settle Raymond Pautz' case for $8000? Answer yes or no.' [Question No. 2, which depended upon an affirmative answer to Question No. 1, was not reached.]

\* \* \* \* \*

"* * * you shouldn't bother yourself particularly as to whether or not it was December 7th or December the 8th because there isn't any dispute between the parties that the conversations were had."

Following its instructions, the court inquired of both counsel, "Any additions or corrections?" There is nothing in the record to indicate that plaintiff's counsel responded to such question. The jury answered the foregoing interrogatory in the negative, and based thereon the court made findings which included the following:

"That the jury brought in the following Special Verdict:

\* \* \* \* \*

" '* * * Did Mr. McClellan on December 7th or December 8th, 1961, make an offer to Mr. Munson to settle Raymond Pautz' case for $8,000.00?

" '* * * No.'

\* \* \* \* \*

"That Raymond E. Pautz died as a result of cancer between 9:00 and 10:00 p. m. on December 10, 1961.

"That after the conversation of December 7th or 8th, 1961, the next conversation between Mr. McClellan and Mr. Munson was on December 11, 1961, when an agreement for the settlement of Raymond E. Pautz' case was entered into for the sum of $9,000.00.

"That Olga P. Pautz was appointed Special Administratrix of the estate of Raymond E. Pautz on December 12, 1961.

\* \* \* \* \*

"It is hereby ordered, that there be Judgment for the defendant American Insurance Company together with its costs and disbursements in this action."

■ Plaintiff complains that the court erred in denying her motion to strike certain allegations in defendant's answer having relation to its defenses of fraud, mutual or unilateral mistake, and capacity to contract. None of these issues became involved in the litigation and none of them were submitted to the jury. The evidence was directed principally to whether a definite offer of settlement had been made by defendant on December 7, 1961, or at any time before the death of Raymond, and if so whether its acceptance had been communicated to defendant so as to make a contract of settlement before his death. After the closing argument of counsel, the jury was specifically instructed that it should not be concerned with whether decedent's illness had been revealed to defendant. In view of this, and since none of the affirmative defenses sought to be stricken were ever communicated to the jury in any manner whatever, we cannot see that plaintiff was prejudiced by the court's denial of her motion.

Further, plaintiff's motion to strike was not made until the opening of trial. Under Rule 12.06, Rules of Civil Procedure, such motions must be made within 20 days after service of the pleading. Thereafter, if a party deems opposing pleadings irrelevant or otherwise objectionable, he may test them by objection to the admission of evidence thereunder, notwithstanding that a prior motion to strike them has been denied. Alansky v. Northwest Airlines, Inc. 224 Minn. 138, 28 N. W. (2d) 181; 15 Dunnell, Dig. (3 ed.) § 7653.

■ Plaintiff's next contention is that the trial court erred in excluding exhibits A, B, and C, offered in evidence on behalf of plaintiff. Exhibit A is a letter from defendant's attorney dated June 22, 1961, in which he requested an itemized list of the special damages or expenses claimed to have been incurred as a result of the accident and in which he referred to decedent's failure to respond to certain interrogatories previously submitted to him. The letter had nothing to do with whether an offer of settlement or a contract for settlement of decedent's action had been made prior to his death and was entirely irrelevant to such issues. Likewise, exhibit B—a letter dated November 29, 1961, from Raymond's attorney to the Veterans Administration making inquiry as to whether Raymond's death had any relation-

ship to the pending action—also had no bearing on the issues involved in the present actions. Exhibit C is a letter dated December 7, 1961, from Munson to the Veterans Administration Center in which he acknowledges that he had become aware that Raymond was suffering from cancer and in which he requests information with respect to charges against him for medical services and expenses. Therein, Munson mentions that he is endeavoring to "work out a settlement with the defendant insurance carrier" which in fact would negative the claim later made that a definite offer in settlement had been made by defendant on the same date. We find no error in the court's exclusion of the various exhibits described. Evidence which is immaterial or remote to the issues, or so unimportant that a jury cannot reasonably draw inferences from it respecting the issues, should be excluded. St. Paul Mercury Ind. Co. v. Lyell, 216 Minn. 7, 11 N. W. (2d) 491; Reek v. Reek, 184 Minn. 532, 239 N. W. 599; Watre v. G. N. Ry. Co. 127 Minn. 118, 149 N. W. 18. The law affords no specific or definite test for determining whether evidence is conjectural or remote. The question must be left to the practical judgment of the trial court and rests largely in its discretion. Frame v. Hohrman, 229 Minn. 468, 39 N. W. (2d) 881; In re Estate of Waterman, 178 Minn. 90, 225 N. W. 918. Here we find no abuse of such discretion.

■ With respect to the exclusion of testimony relative to the oral communications claimed to have been made by Raymond to his parents prior to his death, which plaintiff contended would establish that Raymond had communicated to them his acceptance of the alleged $8,000 settlement offer, it seems clear that such testimony was properly rejected under the provisions of Minn. St. 595.04,[1] since both of these witnesses had a direct and beneficial interest in the outcome of the litigation. Pearson v. Bertelson, 244 Minn. 224, 69 N. W. (2d) 621; Caldis v. Curtis Hotel Co. 255 Minn. 98, 95 N. W. (2d)

---

[1] Minn. St. 595.04 provides in part: "It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties * * *."

641; 20 Dunnell, Dig. (3 ed.) § 10316. The same information was revealed to the jury by Munson's testimony that on December 11, 1961, he "told Mr. McClellan that my client, Raymond, would accept the $8000 settlement which he had offered." In establishing a foundation for such testimony, he was asked the question:

"* * * Any testimony you have in respect to the alleged contract is based on conversations you had with Mrs. Pautz or Mr. Pautz or the sister and based on something that one or more of those people told you?

*     *     *     *     *

"The Witness: That is correct, I talked with the Pautzes regarding the offer that was made."

In view of the foregoing and the jury's finding that no such offer in settlement had ever been made prior to Raymond's death, we find no error in the rejection of this testimony.

■ Plaintiff's next contention relates to the statement made in the closing argument of defendant's counsel accusing decedent's counsel in the prior action of improper conduct in not revealing that his client was suffering from cancer and in characterizing plaintiff's case and plaintiff's counsel as knowingly and intentionally attempting to perpetrate a fraud on the defendant. The argument was based upon Munson's testimony that, although he was aware that Raymond was suffering from cancer on December 7, 1961, he had not revealed this to the defendant in the negotiations for settlement; and upon evidence that he had hurriedly procured appointment of Raymond's mother as special administratrix of his estate so that she might endorse the draft for $9,000 and sign the release on his behalf.

While the argument of defendant's counsel, as above referred to, included language which could be regarded as intemperate, a review of the testimony is indicative that the sharp conflict between counsel as to the truth or falsity of claims made with reference to an offer in settlement may have engendered the comment described. We do not approve of expressions such as those referred to, but feel that, where plaintiff's counsel took no exceptions to them, and made no request for cautionary instructions with respect thereto, no grounds for reversal

based thereon have been established. It is also significant that even in the motion for new trial plaintiff's counsel did not assert this claim as a basis therefor. Therein the only reference to irregularities was that relating to "defendant's counsel's characterization of the plaintiff's case as being groundless." In Pelzer v. Lange, 254 Minn. 46, 54, 93 N. W. (2d) 666, 672, we stated:

"* * * where a party fails to request corrective instructions before the jury retires, he may not later claim that the statements of opposing counsel in the closing argument constituted misconduct, justifying a new trial, Beebe v. Kleidon, 242 Minn. 521, 65 N. W. (2d) 614; Jurgensen v. Schirmer Transp. Co. 242 Minn. 157, 64 N. W. (2d) 530; Eilola v. Oliver Iron Min. Co. 201 Minn. 77, 275 N. W. 408; Flemming v. Thorson, 231 Minn. 343, 43 N. W. (2d) 225; Patton v. Minneapolis St. Ry. Co. 247 Minn. 368, 77 N. W. (2d) 433, 58 A. L. R. (2d) 921, unless such statements were so flagrant and reprehensible that the court should have acted thereon upon its own motion. Beebe v. Kleidon, 242 Minn. 521, 65 N. W. (2d) 614; Patton v. Minneapolis St. Ry. Co. *supra.*"

Under the circumstances present at the trial of this action, we cannot say that the statements complained of were so flagrant and reprehensible that the court should have acted thereon on its own motion notwithstanding the silence of plaintiff's counsel at the time.

■ Plaintiff's next contention is that the court erred in refusing to grant her motion for a directed verdict—

"* * * in favor of the plaintiff on the grounds that taking the evidence in the light most favorable to the defendant, * * * [on December 11, 1961] a valid third-party contract was entered into to pay $9000 to Raymond Pautz, and that there was an offer of this and acceptance of it by Munson, and that it was supported by a good and sufficient consideration * * *."

Plaintiff's argument is that, since the evidence disclosed that on December 11, 1961, Munson had agreed to accept an offer for his client in the sum of $9,000 in consideration of his guaranteeing payment of the bill of Methodist Hospital for $271, a binding contract was

consummated on behalf of Raymond. We cannot agree. At that time Munson's authority to act for Raymond had been terminated by the death of the latter on the day previous. Bergum v. Palmborg, 239 Minn. 569, 58 N. W. (2d) 722; Teter v. Irwin, 69 W. Va. 200, 71 S. E. 115; 7 Am. Jur. (2d) Attorney at Law, § 141. Prior to that time, as the jury determined, no offer of settlement had been made and accordingly no acceptance of such an offer could have been made prior to Raymond's death. Defendant testified that such offer was based upon receiving from Raymond a release of all his claims against defendant. His death made it impossible to carry out this provision of the alleged settlement agreement. Undoubtedly such an offer would not have been made in any event had defendant been aware that Raymond had just died.

In this respect the case is distinguishable from Daly v. Chicago & N. W. Ry. Co. 262 Minn. 351, 114 N. W. (2d) 682, 94 A. L. R. (2d) 499, where prior to his death the plaintiff had communicated to his attorney his acceptance of a written offer in settlement of his case made by defendant, and where his attorney had in turn communicated such acceptance to defendant likewise prior to plaintiff's death. There it was held that, since a compromise figure had been agreed upon and accepted and no signed release had been required by defendant at the time, the contract for settlement became complete before plaintiff's death. There we stated (262 Minn. 355, 114 N. W. [2d] 685):

"It is our opinion that there was evidence to sustain the findings of the trial court that a contract had existed between decedent and defendant since February 3, 1960. The consideration which defendant receives under this contract is a defense to any suit on the original tort. * * * The accord contemplated that a formal release be executed, but this is unnecessary under Minnesota law. When the defendant pays the amount due under its contract * * * it will be automatically released of both Daly's cause of action and any cause of action that his estate might claim to have. There is ample authority that the payment of an accord automatically discharges all liability on the original liability."

■ In plaintiff's assignment of errors a number of other objections

are made to the trial procedure. However, these were not argued in the brief and accordingly must be deemed waived. Kaehler v. Kaehler, 219 Minn. 536, 18 N. W. (2d) 312; Louden v. Louden, 221 Minn. 338, 22 N. W. (2d) 164; Haugen v. Swanson, 222 Minn. 203, 23 N. W. (2d) 535.

Affirmed.