## MATTHEW KOPPINGER, d.b.a. SAFARI LOUNGE, v. CITY OF FAIRMONT.

248 N. W. 2d 708.

November 26, 1976—No. 46154.

*Chadwick & Johnson, John R. Bridell,* and *Mark J. Condon,* Minnesota Civil Liberties Union, and *Stanley Nathanson,* Law Student, for appellant.

*Johnson, Berens & Wilson* and *Richard D. Berens,* for respondent.

Heard and considered en banc.

KELLY, JUSTICE.

Plaintiff, Matthew Koppinger, owner and operator of the Safari Lounge in the city of Fairmont, Minnesota, appeals from

a judgment dismissing his attempt to have a certain ordinance of that city declared unconstitutional on its face. We reverse.

Plaintiff, who owns a 3.2 beer bar and adjoining bowling alley, employs male and female performers to dance to accompanying prerecorded music for the entertainment of customers in his 3.2 beer establishment. Female performers often dance topless or completely nude. Male performers on occasion have danced completely nude. The performers, when dancing in the nude, are clearly visible to patrons of the 3.2 beer establishment, but not to patrons of the bowling facility. Both the beer establishment and the bowling facility are licensed under Fairmont City Code, § 4.15 and §§ 4.30 to 4.33.

Plaintiff brought the instant action seeking a declaratory judgment that a city ordinance adopted after a special election on June 25, 1974, was unconstitutional and an injunction against the enforcement of that ordinance. The ordinance in pertinent part reads as follows:

"ORDINANCE NO. 29

"AN ORDINANCE ADDING A NEW SECTION 6.63 TO THE CITY CODE TO PROHIBIT NUDITY AND THE USE OF OBSCENE WORDS IN PUBLIC BUSINESS ESTABLISHMENTS.

"The City of Fairmont does ordain:

"Section 1.   That a new section 6.63 be added to the Fairmont City Code which shall read as follows:

"Section 6.63   Publicly displaying nudity in public business establishments prohibited.

"Subd. 1.   Definitions.

"As used in this section, the following terms shall mean as follows:

"(a)   'Nudity' means the showing of the post-pubertal human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or the showing of a post-pubertal female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state.

"(b) 'Sado-masochistic abuse' means scenes involving a person or persons, any of whom are nude, clad in undergarments or in sexually revealing costumes, and who are engaged in activities involving the flagellation, torture, fettering, binding or other physical restraint of any such persons.

"(c) 'Sexual conduct' means acts of masturbation, homosexuality, sexual intercourse, or physical contact with a person's unclothed genitals, pubic area, buttocks or, if such a person be a female, her breast.

"(d) 'Sexual excitement' means the condition of the human male or female genitals or the breasts of the female when in a state of sexual stimulation or the sensual experience of humans engaging in or witnessing sexual conduct or nudity.

"(e) 'Exhibit publicly' means the exposing or exhibiting of any portion of a person's body in such a manner that it may be readily seen in any place frequented by the public governed by Chapter 4 of the City Code of the City of Fairmont or in any public place.

\* \* \* \* \*

"Subd. 2. Violations.

"It is unlawful for any person to knowingly:

"(a) Exhibit publicly or permit to be exhibited publicly any portion of the human body in such a manner as to constitute nudity as described herein or in such a manner as would depict Sado-masochistic abuse, sexual conduct or sexual excitement.

"(b)˙ Permit any exhibition described in this section on premises owned, rented or operated by him.

\* \* \* \* \*

"Section 2. That this ordinance shall be in force and take effect thirty (30) days from and after its passage and publication or posting in accordance with Section 3.08 of the Charter of the City of Fairmont."

Chapter 4 of the Fairmont City Code, referred to in § 6.63, subd. 1(e), above, is a business regulation section governing licensing and prohibiting certain practices in pool halls, bowling alleys,

public dancing places, places selling tobacco, and on- and off-sale beer and liquor establishments. Plaintiff assailed § 6.63, subds. 1(a, e) and 2(a, b), as violative of several provisions of the United States and Minnesota Constitutions, most notably those provisions dealing with freedom of speech.[1] The district court denied relief, and plaintiff appealed to this court. Subsequently, the city council adopted Ordinance No. 47, amending Ordinance No. 29 by deleting from § 6.63, subd. 1(e), the words "or in any public place." While this change narrows the scope of the ordinance considerably, it does not eliminate plaintiff's constitutional objections.

■ One issue is dispositive of this appeal: Is the ordinance unconstitutional on its face as an overbroad intrusion into freedom of expression?

Plaintiff's central attack on the Fairmont ordinance is based on alleged overbroad intrusion by the ordinance into freedom of expression.[2] The thrust of that attack is that nudity may be

[1] U. S. Const. Amend. I, provides in relevant part: "Congress shall make no law * * * abridging the freedom of speech * * *."

It is clear that the First Amendment applies to the states because its guarantees are made applicable to the states by the due process clause of the Fourteenth Amendment. Southeastern Promotions, Ltd. v. Conrad, 420 U. S. 546, 95 S. Ct. 1239, 43 L. ed. 2d 448 (1975); Douglas v. City of Jeannette, 319 U. S. 157, 162, 63 S. Ct. 877, 880, 87 L. ed. 1324, 1328 (1943).

Minn. Const., art. 1, § 3, provides: "The liberty of the press shall forever remain inviolate, and all persons may freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of such right."

[2] Plaintiff raised a number of other challenges to the constitutionality of the ordinance in the trial court, and states these challenges as issues in his brief in this court. He fails, however, to present any argument or analysis on those issues either in his brief or at oral argument to guide this court in framing or resolving them. Under these circumstances, the city is correct in arguing that plaintiff has waived these issues. Pautz v. American Ins. Co. 268 Minn. 241, 128 N. W. 2d 731 (1964).

an integral part of protected forms of expression, e. g., dance performances, theatrical performances, etc. Therefore, plaintiff argues, an ordinance may not sweep broadly over these protected forms of expression under the guise of prohibiting certain conduct or forms of expression which might not be protected.

The response to plaintiff's argument is that nudity is not protected expression, but conduct, which the city has a substantial interest in regulating via its police power. See, State v. Ray, 292 Minn. 104, 193 N. W. 2d 315 (1971). Nudity was a traditional common-law crime, an act malum in se. Le Roy v. Sidley, 82 Eng. Reprint 1036 (1663); Truet v. State, 3 Ala. App. 114, 57 So. 512 (1912). The state has a valid interest in prohibiting public nudity. As the Arizona Supreme Court put it:

"* * * The evil sought to be suppressed is not only the infliction of nudity upon a beholder's moral sensibilities, but also the public degradation and debasement of the individual exposed." Yauch v. State, 109 Ariz. 576, 578, 514 P. 2d 709, 711 (1973).

In addition to these moral interests, the city may have further valid interests in preventing public commercial exploitation of sex and acts of rape, prostitution, and other disruptive and disorderly conduct attendant thereto. See, California v. LaRue, 409 U. S. 109, 93 S. Ct. 390, 34 L. ed. 2d 342 (1972).

Unquestionably, both the foregoing arguments have merit, and the decision in any case must follow from a sensitive balancing of the interests in regulation and in freedom of expression. An appropriate starting point for such a balancing is the framework created for viewing conduct/speech issues in United States v. O'Brien, 391 U. S. 367, 88 S. Ct. 1673, 20 L. ed. 2d 672 (1968). In O'Brien the Supreme Court upheld the conviction of a war protester for burning his Selective Service registration certificate on the steps of the South Boston courthouse. He had been convicted under a Federal statute that provided that an offense was committed by any person "who forge[d], alter[ed], knowingly destroy[ed], knowingly mutilate[d], or in any manner change[d]" the certificate. O'Brien had argued that his act of

burning his draft card constituted "symbolic speech" and was entitled to First Amendment protection. The court emphatically rejected that argument in the following terms (391 U. S. 376, 88 S. Ct. 1678, 20 L. ed. 2d 679):

*"We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.* However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. *Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.* We find that the 1965 Amendment to § 12(b)(3) of the Universal Military Training and Service Act meets all of these requirements, and consequently that O'Brien can be constitutionally convicted for violating it." (Italics supplied.)

It is clear from the court's holding and language that hybrids of speech and action are subject to state regulation when important state interests justify regulation of the action component and such regulation may be accomplished with only incidental impact on freedom of expression. It is also clear, however, that,

even within the protected sphere of "expression" or "speech," communications are subject to reasonable regulations to control the time, place, and manner of expression. See, Johnson Bros. Wholesale Liquor Co. v. United Farm Workers, 308 Minn. 87, 241 N. W. 2d 292 (1976) (upholding a limitation on the number of pickets at a site, but striking down a limitation as to the content of picket signs) and cases cited.[3]

Two landmark decisions of the United States Supreme Court in this area are Miller v. California, 413 U. S. 15, 93 S. Ct. 2607, 37 L. ed. 2d 419 (1973), and California v. LaRue, 409 U. S. 109, 93 S. Ct. 390, 34 L. ed. 2d 342 (1972). In Miller, Mr. Chief Justice Burger was careful to distinguish the problem of lewd public conduct from the problem of depiction of such conduct in print and film media (413 U. S. 26, note 8, 93 S. Ct. 2616, 37 L. ed. 2d 431):

---

[3] It is important to note at the outset that this is not an obscenity or pornography case. Although the portions of the ordinance prohibiting sado-masochistic abuse, sexual conduct, or sexual excitement might be justified as regulation of obscenity and not protected speech, the same cannot be said of the portion of the ordinance prohibiting nudity. Nudity in and of itself is not obscene. Erznoznik v. City of Jacksonville, 422 U. S. 205, 213, 95 S. Ct. 2268, 2274, 45 L. ed. 2d 125, 133 (1975); Jenkins v. Georgia, 418 U. S. 153, 161, 94 S. Ct. 2750, 2755, 41 L. ed. 2d 642, 650 (1974); Sunshine Book Co. v. Summerfield, 355 U. S. 372, 78 S. Ct. 365, 2 L. ed. 2d 352 (1958), reversing per curiam without opinion on authority of Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. ed. 2d 1498 (1957), 101 App. D. C. 358, 249 F. 2d 114, which had affirmed 128 F. Supp. 564 (D. D. C. 1955).

Moreover, the portion of the ordinance at issue here does not conform to the guidelines set down by the United States Supreme Court for state laws regulating obscenity: "* * * A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." Miller v. California, 413 U. S. 15, 24, 93 S. Ct. 2607, 2615, 37 L. ed. 2d 419, 430 (1973).

This ordinance contains no such limitation. Therefore, we must examine the ordinance in light of the state's regulatory interest in nudity only.

"Although we are not presented here with the problem of regulating lewd public conduct itself, *the States have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior*. In United States v. O'Brien, 391 U. S. 367, ·377 (1968), a case not dealing with obscenity, the Court held a State regulation of conduct which itself embodied both speech and nonspeech elements to be 'sufficiently justified if * * * it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.' See California v. LaRue, 409 U. S. 109, 117-118 (1972)."

The court thus recognized a greater power in legislatures to suppress lewd conduct than to suppress depictions of the same conduct.

In LaRue the court was confronted with arguments challenging the constitutionality of certain regulations of the California Department of Alcoholic Beverage Control prohibiting sex acts, "displaying of the pubic hair, anus, vulva, or genitals," and other enumerated items in any entertainment in licensed bars and nightclubs. The court noted (409 U. S. 111, 93 S. Ct. 393, 34 L. ed. 2d 348) that "numerous incidents of legitimate concern" to the department had occurred where such entertainment was carried on, including public sex acts and masturbation of various kinds, prostitution, indecent exposure to young girls, rape and attempted rape, and assaults on police officers. The court upheld the regulations against First Amendment arguments, relying heavily on (1) the context of the entertainment, i. e., bar entertainment which is subject to broad state regulation under the Twenty-First Amendment (as opposed to a dramatic performance in a theater), and (2) the nature of the entertainment as conduct or action as opposed to expression. The court was cautious in distinguishing non-bar, across-the-board regulations, however (409 U. S. 118, 93 S. Ct. 397, 34 L. ed. 2d 352):

"The substance of the regulations struck down prohibits licensed bars or nightclubs from displaying, either in the form of movies or live entertainment, 'performances' that partake more of gross sexuality than of communication. *While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board.* It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink.

"Viewed in this light, we conceive the State's authority in this area to be somewhat broader than did the District Court. This is not to say that all such conduct and performance are without the protection of the First and Fourteenth Amendments. But we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of bacchanalian revelries that the Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater." (Italics supplied.)

Thus, while conceding the power of the department to regulate sexual conduct in bar performances, the court left open the possibility that broader regulations might violate the First Amendment.

From LaRue, it is clear that the state authorities could promulgate regulations governing nude dancing in plaintiff's and other bars and could revoke plaintiff's license for violation of such regulations. It seems clear also that a state by a penal statute or a municipality by a penal ordinance can proscribe the same kind of activity. See, City of Seattle v. Hinkley, 83 Wash. 2d 205, 517 P. 2d 592 (1973); Longbridge Investment Co. v. Moore, 23 Ariz. App. 353, 533 P. 2d 564 (1975); Paladino v. City of Omaha, 471 F. 2d 812 (8 Cir. 1972) (ordinance providing for revocation of liquor license). See, also, Doran v. Salem Inn, Inc.

422 U. S. 922, 95 S. Ct. 2561, 45 L. ed. 2d 648 (1975) (raising but not deciding issue of whether ordinance prohibiting females from appearing in public with uncovered breasts was constitutional). Therefore, plaintiff's offering of topless and bottomless entertainment could be the subject of a *narrowly drafted* ordinance. The issue remains whether the Fairmont enactment is such an ordinance.

In contrast to the sordid record in LaRue is a series of Federal cases dealing with performances of the rock musical "Hair." These cases illustrate well the type of nudity that is or may be protected by the First Amendment. "Hair" includes a scene in which, "under subdued lighting and for a period of less than 35 seconds, certain members of the cast appear in the nude and in another scene one member of the cast is draped in or wrapped in an American flag." Southeastern Promotions, Ltd. v. City of Atlanta, 334 F. Supp. 634, 637 (N. D. Ga. 1971). A number of officials denied the promoters of "Hair" the use of public auditoriums and the promoters sued to force those officials to permit them to use public facilities. The promoters were entirely successful. The only case in which local officials were not forced to allow the use of a public theater, Southeastern Promotions, Ltd. v. Conrad, 341 F. Supp. 465 (E. D. Tenn. 1972), affirmed, 486 F. 2d 894 (6 Cir. 1973), was reversed by the United States Supreme Court on a theory of prior restraint. Id. 420 U. S. 546, 95 S. Ct. 1239, 43 L. ed. 2d 448 (1975).[4]

While the rationales and opinions of the various Federal courts differ somewhat, the case best expressing the First Amendment aspects of the question is Southeastern Promotions, Ltd. v. City of Atlanta, 334 F. Supp. 634, 639. The district court in that case refused to apply a speech/conduct distinction to "Hair," saying:

---

[4] Various cases dealing with "Hair" are cited in Southeastern Promotions, Ltd. v. Conrad, 420 U. S. 546, 548, note 1, 95 S. Ct. 1239, 1241, 43 L. ed. 2d 448, 453; and in Southeastern Promotions, Ltd. v. City of Mobile, 457 F. 2d 340 (5 Cir. 1972).

"* * * The nonverbal elements in a theatrical production are the very ones which distinguish this form of art from literature. It may be true that First Amendment protections vary in different media, but a musical play must be deemed a unitary form of constitutionally protected expression."

The court concluded that the entire musical play "Hair" was speech and entitled to First Amendment protection.

The "Hair" cases establish that nudity, in the proper context,[5] may be a constitutionally protected form of expression. Therefore, any ordinance purporting to regulate nudity must not sweep over that area.

The problems of drafting a statute or ordinance so that it does not sweep broadly over nudity as a form of protected expression are well illustrated in a continuing controversy in the Second Circuit. That controversy will be discussed in full because it is directly relevant to a decision in the instant case. The controversy began in 1973 when the town of North Hempstead, New York, enacted an ordinance prohibiting any person from appearing "in a cabaret, bar and/or lounge, dance hall, or discotheque, or any other public place within the Town * * * with breasts uncovered * * * or the lower part of the torso uncovered" and prohibiting any person who owned or operated such premises from permitting such an appearance. Three bar owners challenged the ordinance on its face. When a temporary restraining order was refused, one of the bar owners continued to offer proscribed topless entertainment and was served with criminal process, while the other two refrained, pending a decision on a motion for temporary injunction. The temporary injunction was issued, the district court refusing to abstain pending the state criminal proceedings and holding that the ordinance was overbroad. Salem Inn, Inc. v. Frank, 364 F. Supp. 478 (E. D. N. Y. 1973). The Court of Appeals for the Second Circuit affirmed

---

[5] One court has held that use of a theater may not in and of itself constitute a proper context. City of Seattle v. Marshall, 83 Wash. 2d 665, 521 P. 2d 693 (1974) (plotless burlesque show).

on the same grounds. 501 F. 2d 18 (1974). The United States Supreme Court granted certiorari and affirmed the temporary injunction as to the two owners who had not violated the ordinance, but reversed as to the third owner, holding that abstention was required. Doran v. Salem Inn, Inc. 422 U. S. 922, 95 S. Ct. 2561, 45 L. ed. 2d 648 (1975). Mr. Justice Rehnquist, speaking for a unanimous court on the issue, held that the district court did not abuse its discretion in finding that the ordinance was probably overbroad, thus justifying the injunction (422 U. S. 932, 95 S. Ct. 2568, 45 L. ed. 2d 660):

"The other inquiry relevant to preliminary relief is whether respondents made a sufficient showing of the likelihood of ultimate success on the merits. Both the District Court and the Court of Appeals found such a likelihood. The order of the District Court spoke in terms of actually holding the ordinance unconstitutional, but in the context of a preliminary injunction the court must have intended to refer only to the likelihood that respondents ultimately would prevail. The Court of Appeals properly clarified this point. 501 F. 2d, at 20-21.

"Although the customary 'bar room' type of nude dancing may involve only the barest minimum of protected expression, we recognized in California v. LaRue, 409 U. S. 109, 118 (1972), that this form of entertainment might be entitled to First and Fourteenth Amendment protection under some circumstances. In LaRue, however, we concluded that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a state could therefore ban such dancing as a part of its liquor license program.

"In the present case, *the challenged ordinance applies not merely to places which serve liquor, but to many other establishments as well.* The District Court observed, we believe correctly:

" 'The local ordinance here attacked not only prohibits topless dancing in bars but also prohibits any female from appearing in "any public place" with uncovered breasts. There is no limit

to the interpretation of the term "any public place." It could include the theater, town hall, opera house, as well as a public market place, street or any place of assembly, indoors or outdoors. Thus, this ordinance would prohibit the performance of the "Ballet Africains" and a number of other works of unquestionable artistic and socially redeeming significance.' 364 F. Supp., at 483.

We have previously held that even though a statute or ordinance may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the Court. As we said in Grayned v. City of Rockford, 408 U. S. 104, 114 [92 S. Ct. 2294, 2302, 33 L. ed. 2d 222] (1972) :

" 'Because overbroad laws, like vague ones, deter privileged activity, our cases firmly establish appellant's standing to raise an overbreadth challenge.'

*"Even if we may assume that the State of New York has delegated its authority under the Twenty-first Amendment to towns such as North Hempstead, and that the ordinance would therefore be constitutionally valid under LaRue, supra, if limited to places dispensing alcoholic beverages, the ordinance in this case is not so limited.* Nor does petitioner raise any other legitimate state interest that would counterbalance the constitutional protection presumptively afforded to activities which are plainly within the reach of Local Law 1-1973. See United States v. O'Brien, 391 U. S. 367, 377 (1968).

"In these circumstances, and in the light of existing case law, we cannot conclude that the District Court abused its discretion by granting preliminary injunctive relief. This is the extent of our appellate inquiry, and we therefore 'intimate no view as to the ultimate merits of [respondents'] contentions.' Brown v. Chote, [411 U. S. 452, 457, 93 S. Ct. 1732, 1735, 36 L. ed. 2d 420, 425 (1973)]. The judgment of the Court of Appeals is reversed as to respondent M & L, and affirmed as to respondents Salem and Tim-Rob." (Italics supplied.)

While the court attempted to limit the force of its statement to review of the issue of abuse of discretion and the mere probability of success on the merits, it may well be wondered how the practical effect of the ruling differs from a final judgment when the issue is the *facial* constitutionality of a statute. Unless the court changes its mind, nothing further need be done after the temporary injunction except the entry of a permanent one. The court's statement would appear to limit LaRue to bars, or at least to areas of *strong* state interest, and to prohibit sweeping ordinances banning all nudity.

The ordinance in the instant case suffers from the same infirmity of overbreadth as the ordinance in the Salem Inn, Inc. case. It applies not only to bars and liquor establishments, but to all public dancing places and all places selling tobacco, for such places are governed by c. 4 of the Fairmont City Code. It would apply to a public theater with a cigarette machine and a discotheque serving only soft drinks. These establishments would, by the terms of the ordinance, be prohibited from permitting the performance of any constitutionally protected work that involved the prohibited nudity. Therefore, the ordinance sweeps too broadly in prohibiting such performances, and the city of Fairmont must redraft it. It appears that the city might have avoided this problem by drafting separate ordinances to apply to the various kinds of establishments it wished to govern.[6] In this way, judicial review of an anti-nudity ordinance directed at nudity in bars (this plaintiff's activity and presumably the city's prime concern) could give full weight to the particular state interests involved in regulating such establishments.

■ We are reluctant to strike down the Fairmont ordinance in the context of this case. Plaintiff here is a bar owner and, because nudity in his bar may be proscribed under LaRue, he as-

---

[6] The author of this opinion is not enamoured of the overbreadth doctrine since it seems that it may place form over substance if a city could adopt a series of ordinances that in their totality may be overbroad but taken one by one are not subject to the overbreadth doctrine.

serts the interests of theaters and other third parties who would use nudity as a constitutionally protected form of expression. However, it is now well established Federal law that, at least with respect to First Amendment challenges, even those litigants whose activities could be properly prohibited in a closely drawn statute may attack a statute which is overbroad on its face. Gooding v. Wilson, 405 U. S. 518, 92 S. Ct. 1103, 31 L. ed. 2d 408 (1972); Coates v. City of Cincinnati, 402 U. S. 611, 91 S. Ct. 1686, 29 L. ed. 2d 214 (1971); Salem Inn, Inc. v. Frank, 501 F. 2d 18, 21, note 3 (2 Cir. 1974); Tollett v. United States, 485 F. 2d 1087, 1088 (8 Cir. 1973). This rule is recognized because of the "danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." Dombrowski v. Pfister, 380 U. S. 479, 487, 85 S. Ct. 1116, 1121, 14 L. ed. 2d 22, 28 (1965), quoting N. A. A. C. P. v. Button, 371 U. S. 415, 433, 83 S. Ct. 328, 338, 9 L. ed. 2d 405, 418 (1963). The United States Supreme Court has reasoned that such standing is necessary "because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression." Gooding v. Wilson, 405 U. S. 518, 521, 92 S. Ct. 1103, 1105, 31 L. ed. 2d 408, 413. The court has warned, however, that since this rule is a departure from the general rules of standing, the overbreadth of the challenged statute "must not only be real, but substantial as well * * *." Broadrick v. Oklahoma, 413 U. S. 601, 615, 93 S. Ct. 2908, 2918, 37 L. ed. 2d 830, 842 (1973).[7]

Based on our analysis of the relevant Federal decisions, we

---

[7] This court recognized the same principle in State v. Hultgren, 295 Minn. 299, 204 N. W. 2d 197 (1973), in which we reversed the conviction of an unlicensed, non-physician abortionist because we were compelled to declare the Minnesota anti-abortion statutes unconstitutional. Although the defendant there could have been prohibited from performing abortions by a properly drawn statute regulating unlicensed lay abortionists, the Minnesota statute as drafted could not be enforced against him.

reluctantly hold that the Fairmont ordinance is unconstitutional on its face because of substantial overbreadth. We must therefore reverse.

Reversed.