STATE v. SMITH GARDNER RAY III AND OTHERS.

193 N. W. 2d 315.

December 30, 1971—No. 42958.

*Cohen, Ahl & Budd* and *Robert W. Ahl,* for appellants.

*Keith M. Stidd,* City Attorney, *Frederick Spencer,* Assistant City Attorney, and *Donald H. Walser,* Legal Intern, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, and Peterson, JJ.

PETERSON, JUSTICE.

These are appeals from misdemeanor convictions arising out of the operation of a "photography studio" where, for a fee, any person may observe women "models" disrobe and posture in the nude.

Majesto Studio, located in Minneapolis, advertises itself as a photography studio where any person, upon paying the price of $17.50 per ½ hour, may view and photograph a model of his choice in one of its closed rooms. Defendant Smith Gardner Ray III is the manager of the studio, and defendants Dorothy L. Lough, Ann E. McClay, and Sherrie Lynn Grundahl are women employed as such models and who were present in the establishment on the night of March 31, 1970.

Minneapolis Police Morals Squad Officer Gordon Haertel,

posing as a customer, went to Majesto Studio on that date. His first contact was with defendant Ray, the manager, who collected the fee from him. Defendant Dorothy Lough then showed him pictures of various nude models from which he was to make a selection. Haertel selected defendant Lough, who took him to a private room. She gave him a Polaroid camera, containing self-developing color film, and instructed him in its operation. She offered to pose in a bathing suit, lingerie, or in the nude. He chose to photograph her in the nude.[1] When Haertel commented about a bruise on her leg, Miss Lough replied that a customer had "touched her" and requested that he maintain a distance of several feet. He took 8 photographs of her from a distance of 4 or 5 feet. Upon completion of the picture taking, Miss Lough applied backing to the pictures and handed them to Haertel.

Officer Haertel left the studio and returned a few minutes later with Officer Robert Berneck. They arrested all of the defendants, charging Miss Lough with violation of Minneapolis Ordinance § 870.120 and the other defendants with violation of Minneapolis Ordinance § 870.140.

These ordinances, by their terms, prohibit indecent acts and knowing presence or participation in a place where such acts are performed.

§ 870.120 provides: "No person, in any public or private place shall engage in, or offer or attempt to engage in * * * (a) *lewd, lascivious or immoral conduct,* (b) the use of slanderous, foul, obscene, or indecent language, (c) *the indecent or lascivious exposure or use of the human body,* or any part thereof, or (d) behavior, whether by words or acts of a nature to corrupt the

---

[1] The record does not indicate whether customers on any occasion photographed the models in lingerie or bathing suits. At the time of the arrest, Officer Haertel observed defendant Lough posing for another man in the nude, and his colleague, Officer Robert Berneck, observed yet another nude model posing for a man in another room. At the time of selecting a model, as noted, the pictures exhibited to Officer Haertel were of models posed in the nude.

public morals or to outrage the sense of public decency." (Italics supplied.)

§ 870.140 provides in pertinent part: "No person shall own, lease, operate, maintain, reside in, visit or entice or attempt to entice another to reside in or visit, any building or place with knowledge that unlawful sexual intercourse, prostitution, *lewd, lascivious or indecent acts,* gambling, or the unlawful sale of intoxicating liquor or non-intoxicating malt liquor occurs therein."[2] (Italics supplied.)

The interrelated issues are whether these ordinances infringe upon free expression, guaranteed by the First Amendment, and are so vague and indefinite as to deny due process, guaranteed by the Fourteenth Amendment. We hold that by their terms and in their application to these defendants the ordinances are constitutional.

First, the applicable parts of these ordinances relate to conduct, not the communication of ideas. The United States Supreme Court, in opinions shared by all its members, has made the distinction between offensive conduct, which the state may regulate, and speech, which is accorded a high degree of immunity from regulation.

In United States v. O'Brien, 391 U. S. 367, 376, 88 S. Ct. 1673, 1678, 20 L. ed. 2d 672, 679 (1968), the court, in an opinion by Mr. Chief Justice Warren, to which only Mr. Justice Douglas dissented, held that a war protester's act of publicly burning a draft card was not constitutionally protected as symbolic speech, stating:

---

[2] The concluding sentence of § 870.140 reads: "Evidence of the general reputation of such a building or place as one where any of the foregoing occurs shall be prima facie evidence of such knowledge." Although both the state and defendants have made an evidentiary issue about the general reputation of this establishment, we consider it irrelevant in a situation where, as here, each of the defendants so obviously had actual knowledge of the nature of the place in which they were employed.

"We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."

Mr. Justice Douglas, however, did acknowledge in his dissent to an obscenity decision, Roth v. United States, 354 U. S. 476, 512, 77 S. Ct. 1304, 1323, 1 L. ed. 2d 1498, 1522 (1957):

"I assume there is nothing in the Constitution which forbids Congress from using its power over the mails to proscribe *conduct* on the grounds of good morals. No one would suggest that the First Amendment permits nudity in public places, adultery, and other phases of sexual misconduct."

Cohen v. California, 403 U. S. 15, 91 S. Ct. 1780, 29 L. ed. 2d 284 (1971), most recently indicated the extent to which the conduct-communication distinction may be drawn. The court's majority of five members reversed a disorderly conduct conviction where Cohen wore in public a jacket upon which he had printed the words "Fuck the Draft." Mr. Justice Harlan, in the opinion for the majority, said that the conviction clearly rested upon "the asserted offensiveness of the *words* Cohen used to to convey his message to the public" and that "[t]he only 'conduct' which the State sought to punish is the fact of communication." 403 U. S. 18, 91 S. Ct. 1784, 29 L. ed. 2d 290. Mr. Justice Blackmun, with whom Mr. Chief Justice Burger and Mr. Justice Black joined, dissented, however, primarily upon the ground that "Cohen's absurd and immature antic" was "mainly conduct and little speech." 403 U. S. 27, 91 S. Ct. 1789, 29 L. ed. 2d 295.[3]

---

[3] State courts have divided on the issue of whether topless dancers in nightclubs are immune from prosecution under proscriptive ordinances or statutes on First Amendment grounds of free expression. Misdemeanor convictions have been sustained in City of Portland v. Derrington, 253 Ore. 289, 451 P. 2d 111, certiorari denied, 396 U. S. 901, 90 S. Ct. 212, 24 L. ed. 2d 177 (1969), and Hoffman v. Carson (Fla.) 250 So. 2d 891 (1971). Convictions were reversed in In re Giannini, 69 Cal. 2d 563, 72 Cal. Rptr. 655, 446 P. 2d 535 (1968), certiorari denied, 395 U. S. 910, 89 S. Ct. 1743, 23 L. ed. 2d 223 (1969), and First Amendment protec-

No creative communication inheres in the "indecent," "lewd," "lascivious," and "immoral" conduct for which these defendants were prosecuted. Unlike nude models employed in, say, professional portraiture, these women were engaged in the crass commercialism of artless nudity for any transient voyeur who paid the price. The status of this activity as an unprotected public nuisance is not altered by the pretense of "photography," for the photograph merely recorded what had been indecently exposed to the customer's naked eye.

Second, the definitive words of the ordinances are not so uncertain in meaning as to deprive these defendants of fair warning as to the conduct for which they could be prosecuted. They are not words of absolute precision, of course, but some imprecision necessarily must be accorded legislative enactments directed against inherently antisocial and immoral conduct. State v. Armstrong, 282 Minn. 39, 162 N. W. 2d 357 (1968); City of St. Paul v. Franklin, 286 Minn. 194, 175 N. W. 2d 16 (1970); cf. State v. Northwest Poultry & Egg Co. 203 Minn. 438, 440, 281 N. W. 753, 754 (1938); State v. Target Stores, Inc. 279 Minn. 447, 471, 156 N. W. 2d 908, 923 (1968).

The terms of these ordinances are unlike those in an ordinance recently held invalid on its face in Coates v. City of Cincinnati, 402 U. S. 611, 91 S. Ct. 1686, 29 L. ed. 2d 214 (1971), because of their potential for indiscriminate prosecution for conduct which

tion was extended, notwithstanding vigorous dissent, to topless waitresses in Glancy v. County of Sacramento, 17 Cal. App. 3d 504, 94 Cal. Rptr. 864 (1971); but an ordinance limited to prohibiting only intoxicated persons from patronizing nude model studios was sustained in Cristmat, Inc. v. County of Los Angeles, 15 Cal. App. 3d 590, 93 Cal. Rptr. 325 (1971). None of these state cases is precisely in point with the present issue. Less in point, but containing meaningful discussions of free speech issues regarding public nudity in other contexts, are Matter of Excelsior Pictures Corp. v. Regents, 3 N. Y. 2d 237, 144 N. E. 2d 31 (1957); Campbell v. State, 169 Tex. Cr. 515, 338 S. W. 2d 255, certiorari denied, 364 U. S. 927, 81 S. Ct. 356, 5 L. ed. 2d 267 (1960); and State v. Nelson (Iowa) 178 N. W. 2d 434 (1970), certiorari denied, 401 U. S. 923, 91 S. Ct. 864, 27 L. ed. 2d 826 (1971).

is either inoffensive or is otherwise protected by the First Amendment. The ordinance in Coates made it a criminal offense "for three or more persons to assemble * * * on any of the sidewalks * * * and there conduct themselves in a manner annoying to persons passing by." The United States Supreme Court, in an opinion written by Mr. Justice Stewart, declared that the vice of this ordinance was that it violated the constitutional right of free assembly and association and, in relation to the present issue of due process, he wrote (402 U. S. 614, 91 S. Ct. 1688, 29 L. ed. 2d 217) :

"Conduct that annoys some people does not annoy others. Thus, the ordinance is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensive normative standard, but rather in the sense that no standard of conduct is specified at all."[4]

These ordinances are not without a determinable standard of conduct, "measured by common understanding and practices." United States v. Petrillo, 332 U. S. 1, 8, 67 S. Ct. 1538, 1542, 91 L. ed. 1877, 1883 (1947). It is not any exposure of the human body which is proscribed by § 870.120, as though sex and sin were synonymous, but only that exposure which is "indecent or lascivious." Similarly, the "lewd, lascivious or indecent acts" proscribed in § 870.140 are cast in the context of such other anti-social conduct as "prostitution." Although the term "prostitution" has the primary meaning of promiscuous sexual inter-

---

[4] Ordinance § 870.120 proscribes "(b) the use of slanderous, foul, obscene, or indecent *language*" and "(d) behavior, *whether by words or acts* of a nature to corrupt the public morals or to outrage the sense of public decency." (Italics supplied.) We need not determine the validity of these provisions other than to observe that they present less an issue of facial validity under Coates v. City of Cincinnati, 402 U. S. 611, 91 S. Ct. 1686, 29 L. ed. 2d 214 (1971), than they might, in application, under Palmer v. City of Euclid, 402 U. S. 544, 91 S. Ct. 1563, 29 L. ed. 2d 98 (1971), or Cohen v. California, 403 U. S. 15, 91 S. Ct. 1780, 29 L. ed. 2d 284 (1971).

course for money, Webster's Third New International Dictionary (1961) p. 1822, the crass exploitation of nudity evinced on this record is, even without sexual contact, a debasement of human sexuality within the secondary meaning of the term. It is patently a form of indecent conduct against which these defendants were fairly forewarned.

Affirmed.