Eileen KNUDTSON, Respondent,

v.

CITY OF COATES, Petitioner, Appellant.

No. C2–92–2533.

Supreme Court of Minnesota.

June 30, 1994.

Rehearing Denied Aug. 11, 1994.

Michael E. Molenda, Michael G. Dougherty, Annette M. Margarit, Severson, Wilcox & Sheldon, P.A., Apple Valley, for appellant.

Randall D.B. Tigue, Minneapolis, for respondent.

James M. Burkhardt, Cannon Falls, for amicus Nat. Family Legal Foundation, et al.

Len L. Munsil, James P. Mueller, Phoenix, AZ, Carla J. Heyl, League of Minnesota Cities, Shoreview, for amicus curiae.

## OPINION

SIMONETT, Justice.

Respondent in this case is a bar owner who challenges two Coates city ordinances prohibiting nudity in licensed liquor establishments as unconstitutional on their face and as applied to her. She alleges that the ordinances violate the right to freedom of expression as guaranteed by Art. 1, § 3 of the Minnesota Constitution.[1] The City of Coates asserts that the ordinances are constitutional because states may ban nudity through a liquor regulatory scheme pursuant to the Twenty-first Amendment to the federal constitution and that the ordinances are a valid exercise of the police power. The district court found the ordinances unconstitutional under the state constitution and permanently enjoined their enforcement. The court of appeals affirmed. 506 N.W.2d 29. We reverse.

Respondent Eileen Knudtson is the sole proprietor of Jake's Bar in the City of Coates in Dakota County. In November 1991, she applied to the city for a liquor license. She obtained a 5-month liquor license on December 1 which was to expire on April 30, 1992. Shortly after opening the bar in January 1992, Knudtson began presenting nude entertainment. In April 1992, Knudtson filed a timely application to renew her license. She received a letter from the city attorney advising her of the meeting at which her license renewal would be considered which stated:

> The Council will be listening to evidence that there are violations of the City's Liquor Ordinance taking place at the bar. Specifically, the violations center around the nude dancing taking place at the bar.

The Coates City Council held a public hearing to consider non-renewal of Knudtson's license. The Council voted not to renew Knudtson's liquor license because she was violating the Coates ordinances prohibiting nudity in licensed liquor establishments.[2]

Knudtson challenged the constitutionality of the ordinances in district court. The district court granted her motions for a temporary restraining order and then a temporary injunction which prevents the city from enforcing the ordinances or from punishing Knudtson for selling liquor without a license. The city admitted most of the allegations in Knudtson's complaint, including her allegation that she was denied her license renewal "for the sole reason that [she] was permitting nude dancing on the premises in violation of Coates City Ordinance Section 603.02." The city contested only her allegation that the ordinances are unconstitutional.

At trial, Knudtson presented testimony of a former member of the City Council concerning the purpose of the ordinances. Hugo Groth testified that the ordinances were enacted in 1978 after city council members received numerous complaints that nude dancing was occurring at the bar now owned by Knudtson, then under other ownership. Groth recalled that the council adopted the ordinance to stop the former owner of the bar from providing nude dancing.

The district court found that the unrebutted testimony of Hugo Groth established that "the ordinances were enacted solely in response to community complaints regarding the nude dancing and were aimed at prohibiting this conduct" and that the city had presented no evidence of legislative intent or purpose. The trial court also made findings

---

1. "* * * all persons may freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of such right." Minn. Const. art. 1, § 3.

2. The ordinances at issue are Coates, Minn. City Ordinances §§ 603.01, 603.02 (1978):

   603.01, PURPOSE. The City of Coates does hereby ordain that it is in the best interest of the public health, safety and general welfare of the people of the City of Coates that certain types of entertainment, as hereinafter set forth, be prohibited upon the premises of licensed liquor and beer establishments so as to best protect and assist the owners and operators and employees thereof, as well as the patrons thereof and the public in general. Further, the City does ordain that the standards set herein are reflective of the prevailing community standards in the City of Coates.

   603.02, CERTAIN ACTS PROHIBITED. It shall be unlawful for any licensee to permit or to suffer any person or persons from being upon the licensed premises when such person does not have his or her buttocks, anus, breast and genitals covered with a non-transparent material.

of fact that no evidence was presented during trial showing any increase in crime in and around Jake's Bar as a result of the nude dancing performed there, nor was any evidence presented that dancers mingle with patrons or that any "sexual improprieties" had occurred as a result of the dancing. The trial court also found that no one is forced to view the performances who prefers not to.

The trial court concluded that the ordinances violate Art 1, § 3 of the Minnesota Constitution. The court invalidated the ordinances on the basis that the Twenty-first Amendment to the federal constitution cannot diminish the free speech guarantees in the state constitution. The trial court also found that the ordinances were not a valid exercise of the city's police power under Art 1, § 2 of the Minnesota Constitution because they were enacted to prohibit nude dancing rather than to protect the public health and welfare.

The court of appeals affirmed, holding that municipal authority to regulate liquor is limited by the free speech guarantee of the Minnesota Constitution and that a municipal ordinance enacted solely to prohibit non-obscene nude dancing in licensed liquor establishments and not to further any legitimate governmental interest violates that guarantee.

The reasoning of the trial court and the court of appeals, in agreeing that the city's actions in not renewing the liquor license violated the Minnesota Constitution, may be summed up as follows: (a) nude barroom dancing is protected under the First Amendment to the federal constitution; however, (b) under the Twenty-first Amendment[3] to the federal constitution, the states, pursuant to their authority to regulate the sale and use of liquor, may regulate nude barroom dancing that might otherwise be federally protected speech;[4] (c) but the right to freedom of expression under Art. 1, § 3 of the state constitution is at least as broad as free speech under the First Amendment; so, (d) nude barroom dancing is therefore protected by the state's free speech guaranty; and (e) because there is no provision in our state constitution corresponding to the Twenty-first Amendment to the federal constitution, the state constitutional protection afforded nude barroom dancing governs.

▬▬ We think it clear, and so hold, that the state's power to regulate the sale of liquor under the Twenty-first Amendment does not limit the free speech protections of our state constitution. The critical issue, as we see it, is whether the state, in regulating the sale and use of liquor, may impose restrictions on nudity in bars without violating Art. 1, § 3 of the Minnesota Constitution.[5]

**3.** "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2.

**4.** In *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) the United States Supreme Court held that states may impinge on First Amendment protections in the context of licensing bars and nightclubs to sell liquor by the drink without violating the federal constitution. The Court said that the "broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals." *Id.* at 114, 93 S.Ct. at 395.

The United States Supreme Court sanctioned a broad application of its holding in *LaRue* in *Doran v. Salem Inn., Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). In *Doran*, the Court stated in dicta that the Twenty-first Amendment outweighed *any* First Amendment interest in nude dancing as long as the state ban is part of a liquor license program. *Id.* at 932–33, 95 S.Ct. at 2568–69. The Court has also

rejected the argument that courts must determine that the dancing is more "gross sexuality" than "communicative expression" to fit under the *LaRue* holding. The Court summarily reversed a state court decision which found that a ban on topless dancing violated the First Amendment because the activity was not analogous to the "gross sexuality" in *LaRue* nor supported by legislative findings demonstrating the need for a rule. *New York State Liquor Auth. v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981). The Court quoted the dicta from *Doran* stating that the Twenty-first Amendment justifies any state restriction on speech as part of a liquor licensing scheme. *Id.* at 717, 101 S.Ct. at 2601.

**5.** The Coates ordinance refers to nudity in liquor establishments, and does not mention nude dancing. Respondent, therefore, also contends the ordinance is overbroad; but we think not as we are dealing with nudity as expressive conduct. (We might add that the definition of "dancing" appears to have been liberally construed in Jake's Bar, as indicated by the video tape made part of the record.)

In this case the people of Coates, through their elected representatives, chose to exercise the municipality's police power to prohibit nude dancing in public bars. The police power may be used to protect—as the Coates ordinance itself recites—"the public health, safety, and general welfare" of the community.

The sparse record does not show that nude dancing at Jake's Bar has resulted in any incitement to criminal activity, so in that sense the public safety is not implicated. But that does not end our inquiry. The City Council evidently found that stark naked dancing in public bars was offensive to community standards of public decency.[6] The City Council may have felt that the presence of liquor establishments advertising nude dancing, in a small community such as Coates, conveyed a message to the children and teenagers of the community that this activity was socially and morally acceptable. As for adult patrons, the City Council may have felt the particular combination of liquor, nudity, and sex, while it might be viewed as adult entertainment, could also be construed as a subliminal endorsement for unlawful sexual harassment. Because nudity is prevalent in advertising, movies and video, it might be added, it does not follow that nude dancing in bars should be similarly allowed. What distinguishes the latter is its physical immediacy for the onlooker. *See Miller v. California,* 413 U.S. 15, 26 n. 8, 93 S.Ct. 2607, 2616 n. 8, 37 L.Ed.2d 419 (1973). Nor are we concerned under the ordinance with nude performances in public forums other than bars.

In short, the ordinance can be viewed as a reasonable exercise of the municipality's police powers. *See Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 569, 111 S.Ct. 2456, 2462, 115 L.Ed.2d 504 (1991) (a public indecency statute, enacted under the traditional municipal police powers, furthers a "substantial government interest" in protecting order and morality) (Chief Justice's opinion, joined in by Justices O'Connor and Kennedy).

Having said this, it remains to consider whether the Coates ordinance impermissibly infringes on the free speech guaranty of our state constitution. To begin with, this is a freedom of expression case.

■ Nude dancing in bars is expressive conduct, and, as a kind of "hybrid speech," is protected under our state constitution. The city's regulation of nudity in bars may be accomplished constitutionally if the regulation has "only incidental impact on freedom of expression," *Koppinger v. City of Fairmont,* 311 Minn. 186, 248 N.W.2d 708, 712 (1976), and if the regulations controlling the expressive conduct are reasonable as to time, place and manner of expression. *Id.*

Here the liquor establishment and the nude dancing have a symbiotic relationship. They share the same regulated hours of activity and the same premises. The consumption of liquor adds to the ambiance and to a relaxation of inhibitions. Significantly, the prohibition on the manner of the performance is narrowly drawn. The ordinance does not prohibit dancing, nor dancing in bars, nor dancing in bars with minimal covering of sexually explicit bodily parts. It is not clear how this minimal prohibition impairs whatever non-obscene, erotic message the dancer is seeking to express.

We believe the curtailment of free expression is nominal and incidental and insufficient to cancel the public welfare concerns of the community. We hold the Coates ordinance as here construed to be constitutional under Art 1, § 3 of the Minnesota Constitution.

■ Assuming arguendo, that the First Amendment to the federal constitution would apply notwithstanding the Twenty-first Amendment, we conclude, for the same reasons given in our discussion of the state constitution, that the Coates ordinance would

---

This case is distinguishable from *Koppinger v. City of Fairmont,* 311 Minn. 186, 248 N.W.2d 708 (1976), where the court invalidated an ordinance restricting nudity in public business establishments as being overbroad. The Coates ordinance is limited to nudity in liquor establishments. In any event, consistent with the record in this case, we construe the ordinance to apply to nude entertaining in bars.

6. According to a video tape which is part of the record on appeal, it appears the patrons sit along the bar and the nude dancers perform on the bar.

not violate the First Amendment. *Barnes, supra.*

Reversed.

KEITH, Chief Justice (concurring specially).

I join in the court's opinion but add these further observations.

Under the *Barnes* case, "state and local governments that have been seeking to drive totally nude dancing establishments out of their communities may do so without invoking their authority under the Twenty-first Amendment to prohibit nude dancing in establishments serving liquor." Comment, 105 Harv.L.Rev. 287, 292 (1991). Moreover, under *Barnes,* states and municipalities may require dancers in public establishments, including barrooms, to wear at least " 'pasties and a G-string' " and may well have the authority to impose more restrictive limitations. *Id.* (quoting *Barnes,* 501 S.Ct. at 592, 111 S.Ct. at 2474 (White, J., dissenting)).

*Koppinger v. City of Fairmont,* 311 Minn. 186, 248 N.W.2d 708 (1976), a decision preceding the United States Supreme Court's decision in *Barnes,* merely invalidated an ordinance involving nudity restrictions in public places under the overbreadth doctrine of the First Amendment. We did not hold or imply in *Koppinger* that nude dancing in public places is protected under the Minnesota Constitution and that absent a Minnesota Constitutional Amendment such as the Twenty-first Amendment to the United States Constitution, municipalities may not use liquor licensing authority to prohibit nude barroom dancing.

More relevant is our decision in *State v. Ray,* 292 Minn. 104, 193 N.W.2d 315 (1971), where this court had little difficulty rejecting a claim that the First Amendment of the United States Constitution was violated by the application of ordinances prohibiting indecent conduct to a purported photographic studio where one could, for a fee, rent a cheap Polaroid-brand camera and take pictures of nude women. I have little doubt that if the same judges who decided *Ray* had been asked to decide that case under the Minnesota Constitution, they would have reached the same result. I also have little doubt that they would have rejected plaintiff bar-owner's claim in this case that the Minnesota Constitution protects nude barroom dancing absent the adoption of an amendment comparable to the Twenty-first Amendment.

GARDEBRING, Justice (concurring in part, dissenting in part).

I respectfully dissent from the majority's conclusion that the ordinances at issue here do not violate Art. 1, § 3 of the Minnesota Constitution.[1] In this opinion, the majority adopts a test for limiting free speech which is a staggering departure from our history of providing significant protection of individual rights under the state constitution. To reach this result, the majority misreads the ordinances at issue, ignores the record below, and substitutes its own moral judgment for legal or constitutional analysis. I offer this analysis as an alternative.

We must first determine whether the ordinances here even implicate the free speech provisions of the Minnesota Constitution.[2]

---

1. I concur with the portion of the opinion that holds that the state's power to regulate the sale of liquor under the Twenty-first Amendment does not limit the free speech protections of our state constitution. However, I note an apparent inconsistency in the reasoning of the majority opinion. While the majority concludes that the Twenty-first Amendment's grant of authority does not limit our free speech provisions, its reasoning as to the impact of the police power on protected speech turns significantly on the presence of liquor at the location of the nude dancing.

2. It is important to note that, despite the majority's distaste for nude dancing, this case does not

involve obscenity. Neither the city nor the amici argue that the dancing at issue is obscene, and if it were obscene it would, of course, not be protected speech. *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). We have previously upheld a criminal statute banning obscenity against a free speech challenge under both the federal and state constitutions. Minn. Stat. § 617.241 (1992); *State v. Davidson,* 481 N.W.2d 51, 55, 58 (Minn.1992). Therefore, any suggestion that this case involves obscenity or any reliance on the *Miller* obscenity standards in deciding this case, as the majority has done, is inappropriate.

Looking first to the status of nude dancing under the federal constitution, one finds that the United States Supreme Court has repeatedly held that nude dancing is expression entitled to some First Amendment protection. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991) (nude dancing is protected expression within the "outer perimeters of the First Amendment"); *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 2179, 68 L.Ed.2d 671 (1981); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975), *California v. LaRue,* 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972); *see also* 4 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 20.61(1) (2d ed. 1992) [hereinafter Rotunda & Nowak]. Live performances and dance are afforded broad First Amendment protection. *Schad,* 452 U.S. at 65, 101 S.Ct. at 2180–81, *LaRue,* 409 U.S. at 130, 93 S.Ct. at 403 (Marshall, J. dissenting). Furthermore, nudity alone does not place otherwise protected expression outside of the protection of the First Amendment. *Jenkins v. Georgia,* 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1974). I therefore conclude, consistent with the United States Supreme Court's view, that the city ordinances in this case implicate speech protected by the First Amendment of the United States Constitution.

Turning to the Minnesota Constitution, this court has not previously considered whether nude dancing is protected expression under the Minnesota Constitution; however, we generally look to the federal constitution to define the parameters of the state constitution's free speech protections. *See State v. Davidson,* 481 N.W.2d 51, 57 (Minn. 1992). In this context, I see no reason to depart from the United States Supreme Court's view of free speech protections, nor has the majority offered one.[3] We have never held that our state constitution's free speech protections are narrower than the protections provided by the First Amendment of the federal constitution, and, to the extent that the majority opinion so holds, it is a significant departure from our previous view of the Minnesota Constitution. I therefore conclude that non-obscene nude dancing is protected expression under Art. I, § 3 of the Minnesota Constitution.[4]

However, even where speech is protected by constitutional provisions, some regulation of that speech may be constitutionally allowed. The city argues that its inherent police power provides a sufficient basis for the regulation of the expressive conduct at issue here. The question then is whether the level of regulation contained in the city ordi-

---

3. Some citizens of the city, and indeed perhaps the members of the majority, may find the type of nude dancing that occurs in licensed liquor establishments more offensive than nude dancing which is part of a more socially accepted artistic performance. I do not believe, however, that the free speech guarantee in our state constitution permits a distinction between protected expression performed as part of a play or a ballet and the same expression in a bar where alcoholic beverages are served. Both are protected speech under our state constitution. *See Commonwealth v. Sees,* 374 Mass. 532, 373 N.E.2d 1151, 1155 (1978). "[I]t is largely because governmental officials cannot make principled decisions in this area that the Constitution leaves matters of taste and style so largely to the individual." *Morris v. Municipal Court for San Jose–Milpitas,* 32 Cal.3d 553, 186 Cal.Rptr. 494, 652 P.2d 51, 53 (1982).

4. This conclusion is consistent with our statement in *Koppinger v. City of Fairmont* that nudity in the proper context may be a form of expression protected by the First Amendment. 311 Minn. 186, 248 N.W.2d 708 (1976). Many other state courts have also held that nude dancing is protected expression. *See Mickens v. City of Kodiak,* 640 P.2d 818 (Alaska 1982); *Dydyn v. Department of Liquor Control,* 12 Conn.App. 455, 531 A.2d 170 (1987), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988); *City of Daytona Beach v. Del Percio,* 476 So.2d 197 (Fla.1985); *Gravely v. Bacon,* 263 Ga. 203, 429 S.E.2d 663 (1993); *Harris v. Entertainment Sys.,* 259 Ga. 701, 386 S.E.2d 140 (1989); *Cabaret Enter., Inc. v. Alcoholic Beverages Control Comm'n,* 393 Mass. 13, 468 N.E.2d 612 (1984); *Commonwealth v. Sees,* 374 Mass. 532, 373 N.E.2d 1151 (1978); *City of Billings v. Laedeke,* 247 Mont. 151, 805 P.2d 1348 (1991); *Nall v. Baca,* 95 N.M. 783, 626 P.2d 1280 (1981); *Bellanca v. New York State Liquor Auth.,* 50 N.Y.2d 524, 429 N.Y.S.2d 616, 407 N.E.2d 460 (1980), *rev'd,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981), 54 N.Y.2d 228, 445 N.Y.S.2d 87, 429 N.E.2d 765 (1981) (on remand), *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982); *Sekne v. City of Portland,* 81 Or.App. 630, 726 P.2d 959 (1986), *rev. denied,* 302 Or. 615, 733 P.2d 450 (1987).

nances, supported by the city's police power, may stand when considered in light of Art. 1, § 3 of the Minnesota Constitution. I conclude that it does not survive that examination.

I agree with the majority's assertion that the government may impose valid time, place or manner limitations on protected expressive conduct. But, while the majority endorses the idea of time, place or manner limitations, it ignores both the underlying principle and the framework for analyzing such limitations. The cases which discuss such restrictions begin with the notion that they must be content-neutral.[5] Furthermore, the Supreme Court has set out a framework for analyzing time, place and manner restrictions as they apply to expressive conduct under the United States Constitution in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). The majority apparently rejects this framework, but provides no explicit alternative test for determining the constitutionality of time, place and manner restrictions under the Minnesota Constitution's free speech provision. The only standard which can be discerned from the majority opinion may be expressed in this way: protected speech in Minnesota may be prohibited if a court can conclude, without any evidentiary basis, that a legislative body "may have felt" the speech was:

1. "offensive to community standards,"

2. "a subliminal endorsement for unlawful [behavior]," or

3. "socially and morally unacceptable."

Examining these justifications more closely, it becomes clear that use of these "interests" to support a restriction on protected speech, even speech only marginally protected, will wreak havoc with our free speech jurisprudence and will make the Minnesota Constitution largely irrelevant to the ongoing debate on the parameters of free speech in this country. Such vague and ill-defined standards, furthermore, are clearly content-based, and could be read to allow the most blatant forms of political censorship, based on the government's perceived sense of "community standards" or "social acceptability." The rule of law announced today may not appear dangerous to a free society when applied to nude dancing, but it is no less available in the constitutional analysis of other types of speech. The majority, with scant analysis, has abandoned a worthy history of providing significant protection for individual rights under the state's constitution and approved an unprecedented and frightening approach to free speech analysis.

The fact that protected speech may be "offensive to community standards" or "morally and socially unacceptable" has never before justified government restrictions on protected speech, and has been rejected as a basis for such restrictions. As this court stated in its decision in *Matter of Welfare of R.A.V.*, 464 N.W.2d 507 (Minn.1991), *rev'd on other grounds*, —— U.S. ——, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992): "If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Id.* at 511 (citing *Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989)). In fact, the free speech protections in our state and federal constitutions are never more important than when unpopular speech is at issue. If enforcing vaguely defined "community standards" or avoiding "socially unacceptable" speech were substantial governmental interests, then the Supreme Court would surely have upheld restrictions on flag burning. *See id.* If we as a people could constitutionally prohibit protected speech because it offends our community standards, surely a city with a large Jewish population, including several thou-

---

5. "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). *See also Cohen v. California*, 403 U.S. 15, 24, 91 S.Ct. 1780, 1787–88, 29 L.Ed.2d 284 (1971); *New York Times Co. v.*

*Sullivan*, 376 U.S. 254, 269–70, 84 S.Ct. 710, 720–21, 11 L.Ed.2d 686 (1964); *NAACP v. Button*, 371 U.S. 415, 444–45, 83 S.Ct. 328, 343–44, 9 L.Ed.2d 405 (1963); *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 895–96, 93 L.Ed. 1131 (1949); *see also* Rotunda & Nowak, *supra* § 20.47 at 296 (citing federal cases).

sand survivors of the Nazi Holocaust, could constitutionally prohibit a march by a Nazi party. *See Collin v. Smith,* 578 F.2d 1197 (7th Cir.), *cert. denied,* 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978).

Furthermore, the ordinances fail even under the majority's "standard," based on the record below and the findings of fact made by the trial court. There is nothing at all in the record of the adoption of these ordinances to suggest that the city of Coates considered any of these identified "governmental interests" or heard any evidence related to them. Not only has the majority invented amorphous and ill-conceived bases on which the city *might* have acted, in order to apply them in this case, it must overlook the specific findings of fact of the trial court. Not only has the majority become an "appellate fact-finder," it has done so without any support in the underlying record.

While I do not suggest that we blindly follow federal constitutional jurisprudence, in other cases where we have chosen to depart from federal constitutional analysis in interpreting parallel provisions of our state constitution, we based our departure upon a close analysis of both state and federal law, and we have articulated a clear justification for our departure.[6] An examination of this case in light of the *O'Brien* test exposes the fundamental weaknesses of the majority's test, or lack of a test, and the danger of departing from federal caselaw without a clear justification for doing so. Under *O'Brien.*

[A] government regulation is sufficiently justified [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 377, 88 S.Ct. at 1679.

If one applies settled free speech principles as set out in *O'Brien* to the record before us, the ordinances at issue clearly fail and are therefore not a valid exercise of the city's police power. First, as discussed above, the hypothetical "substantial governmental interests" identified by the majority are supported neither by the record nor by federal First Amendment law; thus, the ordinances cannot satisfy the second part of the *O'Brien* test.

Next, even if I accepted that the interests asserted either by the parties[7] or by the majority were important or substantial governmental interests, the record in this case shows that they are not unrelated to the suppression of free expression and therefore fail the third part of the *O'Brien* test. This conclusion alone should invalidate the ordinances regardless of the test employed, unless this court wishes to depart from established federal free speech jurisprudence which allows content-based restrictions only if the content of the speech is outside the ambit of the First Amendment. *See, supra,* note 5. An examination of the text of the ordinances and the history of their adoption reveals that their enunciated purpose was to suppress expressive conduct. Although the majority's analysis overlooks the provision, the section of the ordinance labelled, "Purpose" states that "it is in the best interest of the public health, safety and general welfare of the people of the City of Coates *that certain types of entertainment, as hereinaf-*

---

6. *See, e.g., State v. Russell,* 477 N.W.2d 886, 887–89 (Minn.1991) (discussion of the federal rational basis test, precedent in state law for application of a different test under the state constitution, and reasons for applying a more stringent standard for reviewing challenged classifications under the state equal protection provision); *State v. Hershberger,* 462 N.W.2d 393, 397–98 (Minn.), *vacated,* 495 U.S. 901, 110 S.Ct. 1918, 109 L.Ed.2d 282 (1990) (noting that language in the Minnesota Constitution regarding freedom of expression is "distinctively stronger" than the federal counterpart, but stating that federal law may provide guidance for balancing governmental interests and individual rights under the state constitution).

7. Counsel for the city identified a set of governmental interests which are different from those asserted in the majority opinion. The city's asserted interests are: to prevent "the public degradation and debasement of the individual performers," "to prevent the commercial exploitation of sex," to prevent "acts of rape, prostitution, and other disruptive and disorderly acts attendant thereto" and to maintain "the integrity of the family."

*ter set forth, be prohibited* upon the premises of licensed liquor and beer establishments." It is thus plain from the face of the ordinances that they were aimed at restricting entertainment. The record also reveals that the ordinances were enacted in response to complaints from members of the community to "put a stop" to nude dancing occurring at one local bar. The city introduced no evidence at trial that there was any other purpose or intent behind the ordinances, and the trial court found that the ordinances were aimed at prohibiting nude dancing. Where, as here, a municipality enacts an ordinance targeted at one business owner providing "entertainment" protected by the free speech provisions of the state and federal constitutions, albeit marginally so, I conclude that the ordinances are related to the suppression of free expression. It is disingenuous for the majority to now assert other, hypothetical purposes for the ordinances to find them constitutional.

The ordinances also fail the fourth part of the *O'Brien* test, that the restriction on speech be an "incidental" restriction no greater than is essential to furtherance of the governmental interest. The ordinances contain an absolute prohibition of the expressive conduct of nude dancing. As such, they cannot be an incidental restriction. The city has several other, less restrictive means of controlling nude dancing and other forms of adult entertainment. For example, the city may, consistent with the First Amendment, use zoning laws to either concentrate or disperse such businesses. *Young v. American Mini Theaters,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *City of Renton v. Playtime Theaters,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

While the majority rejects the *O'Brien* test, it instead relies on a recent plurality decision of the Supreme Court upholding Indiana's state public indecency statute as applied to nude dancing. *Barnes v. Glen Theater, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). Indiana had adopted a public nudity statute prohibiting "knowingly or intentionally" appearing nude in "a public place." *Id.* at 569, 111 S.Ct. at 2462. The Supreme Court, with no majority

opinion, reversed the Seventh Circuit's en banc holding that the statute was unconstitutional because its purpose was to prevent the message of eroticism and sexuality the dancers conveyed. *Id.* at 565, 111 S.Ct. at 2459–60.

The Supreme Court analyzed *Barnes* under the very *O'Brien* framework the majority rejects. Using the *O'Brien* test, the three-judge plurality reasoned that an important governmental interest of protecting order and morality was legitimately furthered by an overall ban on public nudity, not limited to nude expression. *Id.* at 571–72, 111 S.Ct. at 2463. The history of the Indiana statute showed that it followed a long line of state statutes banning all public nudity, and that it predated barroom nude dancing and was enacted as a general prohibition. *Id.,* at 568, 111 S.Ct. at 2461.

The remainder of the majority was comprised of Justice Scalia and Justice Souter, each of whom wrote separately and concurred in the judgment, but not in its reasoning. Justice Scalia wrote that the statute was not subject to First Amendment scrutiny at all because it was a "general law regulating conduct and not specifically directed at expression." *Id.* Justice Souter agreed that nude dancing is protected expression and that it should be analyzed under *O'Brien.* He differed in the governmental interest which he deemed sufficient to justify the statute, disagreeing with the plurality on "the possible sufficiency of society's moral views to justify the limitations at issue," but finding "the State's substantial interest in combating the secondary effects of adult entertainment establishments of the sort typified by respondent's establishments" to be a sufficient interest. *Id.,* 501 U.S. at 582, 111 S.Ct. at 2468.

None of the bases articulated for upholding the Indiana statute are applicable to this case. The reasoning of the plurality opinion and Justice Scalia's concurrence turns on the terms of the Indiana statute, which was a general prohibition on public nudity, not just a limit on public nude expression. Justice Scalia also noted that "[w]here the government prohibits conduct precisely because of its communicative attributes, we hold the

regulation unconstitutional." *Id.*, 501 U.S. at 577, 111 S.Ct. at 2466. The Coates ordinances at issue here were found by the trial court to be specifically aimed at nude *expression,* and are clearly not of a "general" nature, nor directed broadly to public nudity. The majority concedes as much when it states that it "construe[s] the ordinance to apply to nude entertaining in bars." The nature of the ordinances in this case places them outside both the plurality holding and Justice Scalia's concurrence.[8] The Coates City Council enacted its ordinances in order to stop a protected activity at one bar in response to complaints from members of the community. The ordinances fail to meet the *O'Brien* tests and nothing in *Barnes* alters that result.

The fault in the majority's analysis in this case becomes further evident when one considers its approach to Knudtson's overbreadth argument. For overbreadth purposes, the majority holds that the ordinance is not overbroad because it construes it as applying "to nude entertaining in bars." With its reliance on the narrow scope of the ordinances for overbreadth purposes, the majority directly contradicts its reliance on *Barnes* which upheld the state statute because it was a general prohibition of all public nudity and not targeted at expressive conduct.

It may be that the citizens of Coates are offended by nude dancing at Jake's Bar. It may be that the elected officials of Coates think that such dancing is "morally and socially unacceptable." The fact that the moral judgments expressed by the ordinances may be commonplace does not end our inquiry. The Constitution

> is made for people of fundamentally differing views, and the accident of our finding certain opinions natural and familiar or novel and shocking ought not to conclude our judgment upon the question whether the statutes embodying them conflict with the Constitution of the United States.

*Roe v. Wade,* 410 U.S. 113, 117, 93 S.Ct. 705, 709, 35 L.Ed.2d 147 (1973) (quoting *Lochner v. New York,* 198 U.S. 45, 76, 25 S.Ct. 539, 547, 49 L.Ed. 937 (1905) (Holmes dissenting). We may find the sentiments of the Coates city council "natural and familiar;" we may even agree with them. But for those sentiments to become a constitutionally-approved basis for the prohibition of protected speech is a staggering departure from prior free speech jurisprudence, and bodes ill for the development of state constitutional law in Minnesota. I dissent.

TOMLJANOVICH, Justice, dissenting.

I join the dissent of Justice Gardebring.

PAGE, Justice, dissenting.

I also join the dissent of Justice Gardebring.

---

8. Nor is there support for the city's position in Justice Souter's reasoning. The legally significant difference between the plurality opinion and Justice Souter's concurrence is the governmental interest found sufficient to support the limitation on speech. *Int'l Eateries of Am. v. Broward County,* 941 F.2d 1157, 1160 (11th Cir.1991). Justice Souter did not agree with the plurality that a general governmental interest in "protecting order and morality" was sufficient. To fall under his holding, we would have to find that secondary effects of nude dancing justify the city's ordinances in this case.

The test for secondary effects noted by Justice Souter was that enunciated by the Court in *City of Renton,* 475 U.S. 41, 106 S.Ct. 925. In *Renton,* the Court held that the city could rely on the experience of Seattle and other cities, and on the detailed findings summarized in a Washington Supreme Court opinion in enacting its adult zoning ordinance. *Id.* at 51, 106 S.Ct. at 930–31. Justice Souter referred to this holding in *Barnes* and stated that a city may rely on the experiences of other cities demonstrating the harmful effect of adult entertainment. *Barnes,* 501 U.S. at 583–84, 111 S.Ct. at 2469. The facts regarding the adoption of the Coates ordinances are very different. There is nothing in the record to show that the council enacted the ordinances out of concern for any secondary effects, or that the city council considered any other city's experience. The trial court found as a fact that no evidence was presented showing any increase in crime in an around the bar had occurred or that any "sexual improprieties" had occurred as a result of the dancing.